Geraldine HAMILTON, Personally and as Personal Representative of the Estate of John Mason Hamilton, deceased, Plaintiff-Appellant,

v.

Leonard K. SMITH, M.D., Jaym Hyun, M.D. and St. Francis Hospital, Defendants-Appellees.

No. 1022, Docket 84-7899.

United States Court of Appeals, Second Circuit.

Argued May 15, 1985.

Decided Sept. 20, 1985.

Jeffrey J. Mirman, Farmington, Conn. (Tarlow, Levy, Mandell & Kostin, P.C., Farmington, Conn., James L. Kestell, Daniel E. Livingston, Kestell, Poque & Gould, Hartford, Conn., of counsel), for plaintiff-appellant.

Francis H. Morrison, III, Hartford, Conn. (Patricia A. Carpenter, Day, Berry & Howard, Hartford, Conn., of counsel), for defendant-appellee Leonard K. Smith, M.D.

Eugene A. Cooney, Hartford, Conn. (John F. Scully, Cooney, Scully & Dowling, Hartford, Conn., of counsel), for defendants-appellees Jaym Hyun, M.D. and St. Francis Hosp.

Before LUMBARD, OAKES and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

On this appeal from summary judgment dismissing plaintiff's medical malpractice suit, we must analyze a section of Connecticut's statute of limitation. Strong public policy considerations generally mandate that a plaintiff promptly assert his claim. Defendants contend that when a state legislature enacts a statute of repose it is well aware that such rule will on occasion produce a harsh result. And, defendants continue, for courts to strain to find exceptions to the legislation will simply fuel endless or limitless litigation. Yet, here, as plaintiff points out, the construction of the statute's two-year suit requirement adopted by the court below effectively extinguished his right to sue before he even knew he had a claim. We do not think it the purpose of this part of Connecticut's statute of limitations that the game be over before a plaintiff has had his innings. Hence, we reverse and remand this case to the district court.

I  BACKGROUND

In 1956 John Hamilton had an accident at work in which he injured his left thumbnail. Three years later, in November 1959, defendant Dr. Smith treated him for that injury. Dr. Smith diagnosed the problem as a chronic paronychia, an inflammation accompanied by an infection, and performed a localized excision of part of the thumbnail. In 1965—after six more years had elapsed—Hamilton was admitted to defendant St. Francis Hospital. Dr. Smith operated and sent a tissue sample of Hamilton's thumbnail to the Hospital pathology department. After a hospital pathologist analyzed it, he reported to Dr. Smith that Hamilton's condition was a paronychia. This diagnosis was wrong.

For about six months following Hamilton's discharge, Dr. Smith saw him for routine check-ups. During the ensuing eight years, from 1965 through 1973, Hamilton visited Dr. Smith three times. On those occasions the doctor visually examined the thumbnail, but recommended no further treatment. Plaintiff has alleged that on the most recent visit, he pointed out to Dr. Smith that nodules had begun to appear on his thumb. Smith denies that any nodules then existed.

In 1973 Hamilton retired and moved to Florida. Two years later he consulted a Florida doctor about lumps that had formed on his left thumb. That doctor performed a biopsy and found malignant melanoma, a form of cancer. In December 1975 doctors amputated Hamilton's left thumb. On March 5, 1976 Hamilton's attorney in Connecticut wrote a letter to Dr. Smith seeking information about the earlier treatment of the thumbnail in order to prepare a workers' compensation claim against Hamilton's former employer. The attorney

wrote that Hamilton "has continued to have problems with his thumb and recently it had to be amputated because of a cancerous condition which had arisen and which his present physician feels is related to the original injury." Dr. Smith responded and provided the history of his treatment of Hamilton.

Over the next three years the Florida doctors found that the cancer was spreading. On December 12, 1978 Hamilton filed an updated workers' compensation claim against his former employer. He claimed that the newly discovered cancer was related to the prior work injury to his thumbnail. At the workers' compensation hearing held on May 18, 1979 Hamilton learned that the Connecticut Hospital had kept slides of the tissue samples tested back in 1965. Prior to the hearing, the Hospital had reviewed its slides and discovered that Hamilton's malignant melanoma was evident at the time of its 1965 examination of the tissue. Thus, Hamilton's condition had been misdiagnosed in 1965—Hamilton had cancer, not simply an infection.

Hamilton's cancer continued to spread, and on March 5, 1980 he died. In 1980 his wife, Geraldine Hamilton, personally and as personal representative of his estate, brought the present action in the United States District Court for the District of Connecticut (Clarie, J.). She alleged that Dr. Smith, the hospital pathologist, and the Hospital as the pathologist's employer, were negligent in failing to diagnose and treat her husband for malignant melanoma. She alleged that the defendants fraudulently concealed their acts of medical malpractice, in particular the misdiagnosis of her husband's condition. The defendants denied the allegations and moved for summary judgment on the ground that the plaintiff's claims were barred by the Connecti-

cut statute of limitations, Conn.Gen.Stat. § 52–584.

The district court at first denied the summary judgment motion stating that there remained a genuine issue of fact as to when the decedent learned that he had malignant melanoma. Upon reconsideration the court granted summary judgment in favor of defendants because it concluded that since Hamilton learned that he had cancer late in 1975, "almost four and one-half years before this action was commenced ..., the suit [was] barred by Connecticut General Statutes, § 52–584." *Hamilton v. Smith*, No. H–80–242, slip op. at 2 (D.Conn. Oct. 4, 1984). Based upon his conclusion that Hamilton discovered his physical injury in 1975, the district court then held that after that time there was no continuing course of negligent conduct and no fraudulent concealment of plaintiff's right of action. The court also rejected plaintiff's claim that § 52–584 unconstitutionally denies litigants access to state courts, in violation of the Connecticut Constitution art. I, § 10 and the 14th Amendment of the United States Constitution.

## II ANALYSIS

The applicable statute of limitations in this diversity malpractice case is the Connecticut statute of limitations, Conn.Gen. Stat. § 52–584.[1] *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). That statute applies to all actions to recover damages for injury to the person or to property caused by negligence, reckless or wanton misconduct, or malpractice. Two specific time requirements are imposed on prospective plaintiffs. The first requires a plaintiff to bring an action "within *two years* from the date when the injury is first

---

**1.** § 52–584. Limitation of action for injury to person or property:

No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the

injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed.

sustained or discovered or in the exercise of reasonable care should have been discovered." The second provides that in no event shall a plaintiff bring an action "more than *three years* from the date of the act or omission complained of." Thus, to file a timely claim a plaintiff must satisfy both the two-year and the three-year requirements of the statute.

### A. *Two-year Requirement*

The statute's first requirement is that the plaintiff sue within two years from the date that he or she discovered or should have discovered the "injury." Plaintiff here asserts that her husband discovered the "injury" when he learned at the November 1979 workers' compensation hearing that the doctors had misdiagnosed his condition in 1965. Plaintiff contends that as she filed suit in April 1980, five months after learning of the incorrect diagnosis, she was well within the statute's time requirements. At least, she argues, there exists a genuine issue of fact as to when her husband in the exercise of reasonable care should have discovered his injury. The district court rejected this argument. It ruled that Hamilton discovered or should have discovered his "injury" in 1975 when he learned that he had cancer and that such event occurred five years before suit was brought. The court interpreted "injury" to mean the physical injury. Inasmuch as there was no question about when Hamilton learned that he had cancer, the district court believed that summary judgment was appropriate and dismissed the suit.

### 1. Date of Injury

The first task is to determine what the Connecticut courts say is the meaning of "injury" as used in § 52-584. *See Erie Railroad v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). We note at the outset that the Supreme Court of Connecticut has not addressed the specific question presented here. This is the unusual case in which injury and causation are not apparent at the time of the occurrence. Informed by decisions of Connecticut's highest court and the legislative history of § 52-584's two-year requirement, and the Connecticut limitations statute in general, we conclude that it is when plaintiff discovers, or in the exercise of reasonable care should have discovered, *actionable harm,* not merely physical injury that the statute begins to run. By equating "injury" with "actionable harm" the Supreme Court of Connecticut has indicated that the two-year limitation of § 52-584 starts to run when the plaintiff discovers both that he has suffered physical harm and the causal connection between that harm and the alleged negligent conduct of the defendant. Because the district court improperly construed the meaning of the statute we must remand the case for it to reconsider whether plaintiff's action is barred by the two-year requirement of § 52-584.

In *Barnes v. Schlein,* 192 Conn. 732, 473 A.2d 1221 (1984) (per curiam), a medical malpractice case, the plaintiff alleged that the defendant doctor had operated negligently on her leg in February and April of 1973. Later plaintiff consulted a second doctor from whom she learned that her leg had not healed properly. The second doctor reset the leg. At that time her attorney informed her that she had grounds to sue. She waited two and one-half years, until December 1975, to file suit. The trial court held that the suit was time-barred by the two-year limit of § 52-584, and the Supreme Court of Connecticut affirmed. According to Connecticut's Supreme Court, the "uncontradicted testimony of the plaintiff at her deposition reveals that she knew in April, 1973, that she had suffered 'some form of actionable harm.'" *Id.* at 739, 473 A.2d at 1224 (quoting *Burns v. Hartford Hospital,* 192 Conn. 451, 460, 472 A.2d 1257, 1261 (1984)). The court determined that plaintiff had discovered her "injury" when she knew both that she had suffered some harm and that the defendant's allegedly negligent conduct had caused it.

In the leading case of *Burns v. Hartford Hospital* a two-year-old boy developed an infection in his leg while being treated at defendant hospital. The boy's doctor treat-

ed the infection in the hospital. The doctor told the boy's mother at that time that the infection probably was caused by the use of contaminated intravenous tubes. Three years later the mother sued the hospital and the doctor. Dismissing the suit against the hospital under the two-year limitation of § 52–584, the trial court held that plaintiff had discovered the "injury" when the doctor diagnosed the child's ailment as an infection caused by contaminated intravenous tubes. The Supreme Court of Connecticut affirmed, holding that there was no genuine issue of fact as to when the mother discovered her son's injury. It stated that the statute of limitations commenced when the plaintiff "became fully aware not only of [her son's] injury *but also of its cause.*" 192 Conn. at 456, 472 A.2d at 1259 (emphasis added). Summarizing the two-year requirement of the statute the court said: "The statute requires that the injured party bring suit within two years of discovering the injury. In this context an injury occurs when a party suffers some form of actionable harm." *Id.* at 460, 472 A.2d at 1261 (citation omitted).

■ Decisional law makes it clear that the basic purpose of the statute of limitations is to encourage promptness in instituting claims and to avoid prejudice to defendants which results when a plaintiff delays prosecuting his claim. *Vilcinskas v. Sears, Roebuck & Co.,* 144 Conn. 170, 174, 127 A.2d 814, 816 (1956); *see generally Burnett v. New York Central Railroad,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). Thus, limitations statutes impose an obligation upon plaintiffs not to procrastinate in the assertion of their rights. The two-year constraint of § 52–584 is a "discovery rule" type of limitations statute, that is it starts when the plaintiff discovers or should have discovered his injury. With discovery rules, the limitations period clock does not begin to tick as long as the plaintiff is unaware of the right he seeks to assert. This alleviates some potential harshness to plaintiffs. Under the district court's interpretation of the injury in the instant case, the statute would start tolling plaintiff's rights when the plaintiff learned of his physical injury, even if he had not yet discovered its cause. So read, the limitations period for bringing suit might well be over before a plaintiff even knew that he had a cause of action. This scenario is one that the discovery rule was designed to avoid. Without an otherwise clear indication from the Connecticut legislature, we conclude that it is more consistent with the general purpose of a discovery rule to commence the limitation period only when the plaintiff discovers his legal injury.

Finally, the history of the Connecticut statute of limitations supports our conclusion. Prior to 1935 the time within which personal injury actions could be brought was limited to one year "from the *date of the injury* or neglect complained of." Conn.Gen.Stat. § 6015 (Rev.1930) (emphasis added). Effective July 1, 1935 the statute was changed to limit the time to one year "from the date of the act or omission complained of." Conn.Gen.Stat. § 8324 (Rev.1949). In *Dincher v. Marlin Firearms Co.,* 198 F.2d 821 (2d Cir.1952), we analyzed the language of the early statute, § 6015, and concluded that when the legislature used "date of injury" it meant from the time the cause of action accrued. *Id.* at 823. *See Prokolkin v. General Motors Corp.,* 170 Conn. 289, 295, 365 A.2d 1180, 1183 (1976) (interpreting identical language in Conn.Gen.Stat. § 52–577). It is a fair conclusion that when in 1957 the legislature returned to a formulation of the statute that used the term "injury"—its present form—it intended to use that term in precisely the same way it had used it before. Employing the identical term "injury" was not accidental; there is no reason to believe that the legislature disagreed with the earlier court opinions that equated "date of injury" with the "time the cause of action accrues." For all of these reasons, we believe that the district court erroneously construed § 52–584.

## 2. Summary Judgment

■ Plaintiff claims that under the correct interpretation of § 52–584 it was error

for the district court to enter summary judgment under Fed.R.Civ.P. 56(c). In deciding whether summary judgment is proper, a court must determine that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to show the lack of any genuine issue of material fact. When ruling on such a motion all ambiguities are resolved against the moving party. *Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984). *See Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). "Uncertainty as to the true state of any material fact defeats the motion." *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor",* 691 F.2d 603, 606 (2d Cir.1982).

Plaintiff claims that although her husband knew that he had cancer in 1975, it was not until 1979 that he had reason to suspect that the defendants had misdiagnosed his condition and mistreated him. She claims that prior to 1979 they did not discover, nor in the exercise of reasonable care should they have discovered, any wrongdoing on the defendants' part. Thus, she asserts that before 1979 they could not have known of the causal relationship between his condition and the doctors' alleged negligence. Logically it follows that if the suit is not time-barred, then plaintiff might be able to recover for any damages suffered after 1975. For example, plaintiff could argue that the Florida doctors may not have given Hamilton the most effective treatment in 1975 because they were unaware that he had had a ten-year history of cancer. Plaintiff further contends that in any event whether Hamilton in the exercise of reasonable care should have discovered his injury more than two years before this action was brought presents an issue of fact which precludes summary judgment.

Defendants assert, on the other hand, that Hamilton knew as early as 1976 that while Dr. Smith was still treating him he had cancer. They claim that since he knew or should have known that Dr. Smith was not treating him for cancer during that period, he was aware of his right of action; hence, his claim is time-barred. To support that view, they presented a letter in evidence from Hamilton's attorney to Dr. Smith dated March 5, 1976, which states that Hamilton "has continued to have problems with his thumb and recently it had to be amputated because of a cancerous condition which had arisen and *which his present physician feels is related to the original injury*" (emphasis added). Further, after learning that he had cancer Hamilton pursued a workers' compensation claim against his former employer on the ground that his cancer was related to his 1956 injury for which he was treated throughout his term of employment. Defendants' contend that these facts show that Hamilton knew he had a medical malpractice claim against Smith and the Hospital in 1976 and, therefore, summary judgment barring his wife's 1980 suit is appropriate.

We do not decide whether a genuine issue of fact exists with respect to whether the limitations period began to run more than two years prior to the commencement of this action. Instead, we leave it to the district court on remand to decide whether there exists a genuine fact issue as to when Hamilton discovered or in the exercise of reasonable care should have discovered that he had suffered some sort of actionable harm.

### B. *Three-year Requirement*

The second part of the Connecticut statute provides that no action may be brought more than three years from the date of the act or omission complained of. This three-year time limit causes the statutory clock to begin running when the negligent conduct of the defendant occurs. Consequently, an action may be time-barred even if plaintiff did not discover and in the exercise of reasonable care could not have discovered his injury during the three years following defendants act or omission. *McDonald v. Haynes Medical Laboratory,*

*Inc.,* 192 Conn. 327, 330, 471 A.2d 646, 648 (1984). Unlike the two-year requirement, the three-year limitation will "on occasion bar an action even before the cause of action accrues." *Vilcinskas,* 144 Conn. at 175, 127 A.2d at 816. In short, three years constitutes the cutoff beyond which all actions under § 52–584 are permanently stilled.

In the present case the principal wrongful act about which the plaintiff complains is the improper diagnosis of her husband's skin tissue back in 1965. Were that the only wrongful act complained of, this action would be time-barred as the three-year period would have run in 1968. Nonetheless, the three-year limitations period may be tolled in certain circumstances, allowing a plaintiff to avoid the potentially harsh consequences of this part of § 52–584. Here plaintiff has argued that the statute was tolled because the defendants were engaged in a continuing course of negligent conduct and because the defendants fraudulently concealed from Hamilton information about his cause of action.

### 1. Continuing Negligence

■ When the action sued upon consists of a continuing course of tortious conduct the statute of limitations does not begin to run until the course of conduct is complete. Thus, even though the defendant's first wrongful act occurred a number of years before the action was brought, the claim might still be alive if the defendant breached a continuing duty. *See Handler v. Remington Arms Co.,* 144 Conn. 316, 321, 130 A.2d 793, 795 (1957) (arms manufacturer had continuing duty to warn purchaser of defect after manufacture and sale of weapon); *cf. Bartha v. Waterbury House Wrecking Co.,* 190 Conn. 8, 13–14, 459 A.2d 115, 117–18 (1983) (defendant excavation contractor did not have a continuing duty to safeguard the construction site where plaintiff was injured or to warn plaintiff of any danger). Plaintiff argues that because

her husband continued to see Dr. Smith after the operation, the doctor had a continuing duty to apprise her husband of his true medical condition. Defendant urges that the follow-up treatment, which consisted of only three visits between August 1965 to May 1973 and none thereafter, is insufficient to establish such a continuing duty.

The district court ruled that since Hamilton knew that he had cancer in 1975, any continuing course of negligent conduct that might have existed ended when Hamilton was advised of this condition. Having so ruled, the court did not find it necessary to decide whether plaintiff had shown continuing tortious conduct. Yet, as discussed earlier, Hamilton's discovery of his physical injury in 1975 may not have triggered the two-year limitations period. Rather, the critical date is when the Hamiltons should have discovered the malpractice. If on remand the district court reaches the three-year feature of the statute, it should consider whether there exists a genuine issue of fact regarding the defendants' possible continuing duty to warn that would toll the three-year limitations period. We express no opinion on plaintiff's success in raising such a continuing negligence issue and simply note that the Hospital and its pathologist seem to be in a significantly different position than Dr. Smith as it is less clear what, if any, contact Hamilton might have had with those defendants after 1965.

### 2. Fraudulent Concealment

■ Plaintiff also argues that the defendants fraudulently concealed information concerning her husband's cause of action that thus prevented her from bringing earlier suit. Section 52–595 of the Connecticut General Statutes provides that when a person fraudulently conceals from the plaintiff the existence of a cause of action, the action shall be deemed to accrue against that person when the plaintiff first discovered its existence.[2] Again, it is well

**2.** § 52–595. Fraudulent concealment of cause of action:

If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of

established in Connecticut that the three-year limit of § 52–584, which usually would begin to run when the wrongful act occurred, will be tolled when "there is something tantamount to a fraudulent concealment of a cause of action." *Kennedy v. Johns-Manville Sales Corp.*, 135 Conn. 176, 178, 62 A.2d 771, 772 (1948). In *Lippitt v. Ashley*, 89 Conn. 451, 480, 94 A.2d 995, 1005 (1915), the Connecticut court stated that the statute is tolled when "the defendants' conduct or representations were directed to the very point of obtaining the delay of which he afterwards seeks to take advantage by pleading the statute." To establish fraudulent concealment under Connecticut law, a plaintiff must show that: (1) he was ignorant of the right of action; (2) the defendant intended that he be kept in ignorance; and (3) absent a fiduciary relationship, the defendant was guilty of some affirmative act of concealment. *Zimmerer v. General Electric Co.*, 126 F.Supp. 690, 693 (D.Conn.1954). *See generally Krupa v. Kelley*, 5 Conn.Cir.Ct. 127, 130, 245 A.2d 886, 888–89 (1968). "Fraud is not to be presumed, but must be strictly proven. The evidence must be clear, precise, and unequivocal." *Puro v. Henry*, 188 Conn. 301, 308, 449 A.2d 176, 179 (1983); *Burley v. Davis*, 132 Conn. 631, 634, 46 A.2d 417, 418 (1946); *Basak v. Damutz*, 105 Conn. 378, 382, 135 A. 453, 455 (1926).

Plaintiff claims that Hamilton was ignorant of his medical malpractice claim, that the defendants intended to keep her husband from learning that such a claim existed and that the defendants had a fiduciary relationship towards him. The district court held that once Hamilton learned in 1975 that he had cancer he could not claim ignorance and hence was unable to satisfy the first requirement of fraudulent concealment. In this view the district court was mistaken. The requirement that a plaintiff not know that he has a right of action does not lead to an inquiry as to when plaintiff learns of a physical injury or disease, but rather asks when plaintiff discovered that

he has a cause of action. Thus, the threshold issue in the concealment argument, is identical to the issue of fact dispositive of the two-year limitations question: at what time did Hamilton discover that he had suffered some form of actionable harm? It is for the district court in the first instance to determine whether plaintiff has proved or at least raised genuine issues of fact with respect to this and the other allegations of fraud. To carry her burden of proof in fraudulent concealment plaintiff will, of course, have to meet the strict standards established by Connecticut law.

Finally, since we hold that the action should not be dismissed under the three-year requirement of Conn.Gen.Stat. § 52–584, we need not address the issue raised about the statute's constitutionality, under either the United States of the Connecticut Constitutions. The judgment of the district court therefore is reversed and the case remanded to it for further proceedings consistent with this opinion.

---

action shall be deemed to accrue against such person so liable therefor at the time when the

person entitled to sue thereon first discovers its existence.