In re STEIN AND DAY INCORPORATED, a/k/a Stein and Day/Publishers, Debtor.

Charles William HENDERSON, Plaintiff,

v.

STEIN AND DAY INCORPORATED, Defendant.

Bankruptcy No. 87 B 20300.
Adv. No. 87 Adv. 6106.

United States Bankruptcy Court,
S.D. New York.

Dec. 15, 1987.

Guez, see November 19, 1987 Tr. at 51–52.

Barr and Faerber, Spring Valley, N.Y., for debtor.

Lankler Siffert & Wohl, New York City, for plaintiff.

## DECISION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT AND FOR RELIEF FROM THE AUTOMATIC STAY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Charles William Henderson, the plaintiff in this adversary action, moves for reargument of this court's denial of summary judgment declaring a publishing contract with the debtor terminated and for relief from the automatic stay allowing payment of outstanding royalties. The debtor has filed a cross motion for summary judgment seeking a declaration invalidating the plaintiff's termination of the contract.

### FINDINGS OF FACT

1. The debtor, Stein and Day Incorporated, also known as Stein and Day/Publishers, is in the business of publishing hardcover, trade paperback and mass market paperback books.

2. On December 19, 1984, Charles William Henderson, as author, and the debtor, as publisher, executed a contract (the "contract") to publish a book entitled "Marine Sniper: 93 Confirmed Kills".

3. On or about August 20, 1986, the Debtor entered into a subsidiary agreement with Berkley Publishing Group ("Berkley") under which the debtor conveyed to Berkley the paperback rights to the book.

4. On or about August 21, 1986, the debtor entered into a subsidiary agreement with Nelson Doubleday, Inc. ("Doubleday") to convey to Doubleday the bookclub rights to the book.

5. In October of 1986, the debtor entered into a subsidiary agreement with Soldier of Fortune magazine giving Soldier of Fortune the right to publish an excerpt from the book.

6. On June 25, 1987 the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

7. On July 6, 1987 Charles William Henderson commenced an adversary proceeding against the debtor in which judgment was demanded awarding Henderson payments of royalties due and owing under the December 19, 1984 agreement. Henderson also sought an order directing the debtor to account to him, declaring the agreement terminated and directing that any and all rights in the book be conveyed to him on the theory that Henderson is the sole proprietor and owner of the negatives, typeset pages, rights title and copyright of the book. Henderson also seeks to enjoin the defendant from purporting to hold any right, title or interest or from receiving payment from Berkley, Doubleday or any other third party in connection with the rights of the book.

8. On September 9, 1987, Henderson filed a motion for summary judgment and relief from the automatic stay in the above adversary proceeding, pursuant to Bankruptcy Rule 7056 and 11 U.S.C. § 362, respectively, in which he contended there is no dispute as to the terms of the agreement and the acts of the debtor.

9. After a hearing on September 29, 1987, this court ruled in a memorandum decision dated September 30, 1987, that a substantial question of fact exists as to whether the debtor breached its agreement with Henderson and failed to promote his book as the debtor "deems best". The

court also found that there was a question of fact as to whether or not Henderson was entitled to terminate the written agreement unilaterally under the circumstances of this case.

10. On October 15, 1987, Henderson filed a motion for reargument of the motion for summary judgment asserting the denial of the motion was improper because there is no genuine issue as to any material fact and that he is entitled to judgment on his claims as a matter of law, or alternatively, on the ground that the court issue an order pursuant to Bankruptcy Rule 7056 and Rule 56(d) of the Federal Rules of Civil Procedure specifying those facts which are not in dispute based upon the parties' statements pursuant to Local Bankruptcy Rule 13(h).

11. Additionally, Henderson asks the court to hold that the royalties owed to and retained by Stein and Day are not property of the estate under 11 U.S.C. § 541 and are, therefore, not subject to the automatic stay as to the debtor's property pursuant to 11 U.S.C. § 362, thereby affording Henderson the right to immediate payment of past due royalties. A hearing on this motion was held on December 10, 1987. The Debtor has cross-moved for summary judgment invalidating Henderson's attempt to terminate unilaterally the publishing contract.

### The Agreement

12. Paragraph 1 of the publishing contract, which relates to the obligations of the publisher states:

> Publication: The Publisher agrees, subject to the conditions in this contract, to publish the Work within one year after delivery of a complete manuscript acceptable in form and content to the Publisher and ready for press, but the publisher shall not be responsible for delays caused by circumstances beyond his control. Such publication is to be at the Publisher's own expense, and the Publisher shall select the style and format, set the price, and distribute, sell, advertise, and promote the Work as the Publisher deems best, and keep the Work in print as long as the Publisher finds it economically feasible to do so. ...

13. Under additional terms of the publishing agreement, the debtor is obliged (1) to copyright the book in the name of Charles Henderson; (2) to pay to the author an advance against all payments made to the author under this agreement of $3000, payable in $1000 installments upon the signing of the publishing contract with the debtor, upon delivery of the complete transcript satisfactory to the publisher and upon publication by the publisher; (3) to pay the author additional royalties of varying percentages from copies sold by catalogues, from sales of a trade paperback edition and mass market paperback edition under the publishers imprint, from sales by direct mail circulation or coupon advertisements and from net proceeds received from all other copies, other than remainder and overstock copies, subject to certain limitations; and (4) to provide the plaintiff with a semi-annual accounting reflecting the sales of his book.

14. In accordance with the terms and obligations of the contract, the following facts are undisputed by the parties: (1) The debtor made an initial distribution of approximately 8000 hardcover copies of the Henderson's book in August of 1986; and (2) The debtor owes Henderson royalty payments pursuant to the terms of the contract. The debtor does not oppose summary judgment on the issue of liability.

15. However, there exist material facts upon which the parties disagree. First, an issue exists as to whether the debtor fulfilled its obligations pursuant to paragraph 1 of the contract. The facts in dispute concern the debtor's claims that it "deem[ed] best" to discontinue the printing of the hardcover edition of this book. One of the factors which the debtor utilizes in determining whether additional hardcover copies should be printed is a market analysis of the demand for the book. An issue exists as to whether an analysis was performed by the debtor and, if so, whether it was accurate and timely. In addition, there is a question of whether the debtor

was or is in an "economically feasible" position to keep the book in print.

16. The second disputed issue is the plaintiff's right to terminate unilaterally the contract pursuant to Paragraph 15. Paragraph 15 states:

Out of Print Provisions: The Work shall be considered in print if it is on sale under any of the Publisher's own imprints or under the imprint of another publisher under licenses from the Publisher, or if it is under contract for publication in a cheap or reprint edition. If at any time after two years from the Publisher's original date of publication the Work shall be out of print as above defined and the Author shall make written demand on the Publisher to reissue the Work, the Publisher shall have six months after such written demand to reprint the Work or to make a contract for its reissue within a reasonable time. Upon the Publisher's failure to bring about the reissue of the Work, and upon payment to the Publisher of any sums owing from the Author other than unearned advances, this agreement shall terminate and all rights herein granted shall revert to the Author ...

17. Several questions exist as to whether the debtor and Henderson performed or failed to perform the obligations under this provision of the contract. These questions go directly to the issue of termination of the contract under paragraph 15 and to rescission of the contract as a result of a material breach by the debtor.

18. The third disputed issue relates to Paragraph 5 of the contract which requires the debtor to:

... render a semi-annual statement of account, including a reasonable reserve for returns, to the first day of January or the first day of July immediately succeeding the publication of the said Work and render similar semi-annual statements for all succeeding periods of six months during which said Work has earned $10.00 or more, and forward such statements together with payment on or about the last day of April and the last day of October following to the address of the Author as the same appears at the beginning of this agreement.

19. The debtor contends that it has never denied Henderson an accounting, whereas Henderson asserts the debtor has never provided him with an accounting pursuant to paragraph 5.

20. The final disputed issue is in regard to the amount of royalties owed and when payment is due.

21. Henderson claims the amount of $22,500 is owed and past due by the debtor. The Debtor claims it owes a total of $14,-210.51, $11,998.76 of which is not due and owing until April 30, 1988.

22. The court finds that genuine issues of material fact exist and, therefore, summary judgment is not warranted.

### Property of the estate

23. In light of the fact that the parties do not dispute that past royalties are due, Henderson, desiring payment of these royalties, argues that he is a third-party beneficiary to the agreements between the debtor and any and all subsidiaries with regard to the sale and distribution of his book. Therefore, he claims the funds were "earmarked" for payment to him and that, in effect, a constructive trust should be imposed on the royalties paid to the debtor by Berkley, Doubleday and other third parties.

24. Henderson then asserts that if such a constructive trust imposed, the property is not part of the debtor's estate under 11 U.S.C. § 541 and not subject to the automatic stay provisions of 11 U.S.C. § 362, thereby allowing immediate payment of his royalties by the debtor.

25. However, even if there is no dispute as to the amount of royalties due and owing to the plaintiff pursuant to the contract, and if Henderson is indeed a third-party beneficiary, there is no justification for the imposition of a constructive trust on the royalties in the possession of the debtor. The funds are therefore property of the estate under 11 U.S.C. § 541 and subject to the automatic stay under 11 U.S.C. § 362.

## DISCUSSION OF LAW

■ Henderson seeks summary judgment by claiming that actions on the part of the debtor resulted in a breach of Paragraph 15 of the contract, upon which Henderson may terminate the agreement of the contract, or in the alternative, that the debtor willfully failed to perform other material obligations under the contract, including failure to pay royalties and provide an accounting, thereby warranting rescission. *See Nolan v. Sam Fox Publishing Co., Inc.*, 499 F.2d 1394 (2d Cir.1974). This issue may not be determined by this court without the resolution of the underlying disputed issues. An evidentiary hearing is necessary to determine whether the debtor acted as it "deem[ed] best" and whether it was or is "economically feasible" for the debtor to keep the book in print pursuant to Paragraph 1 of the contract.[1]

In ruling on a motion for summary judgment the court's function is to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), to deny summary judgment where there is a genuine issue as to any material fact, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and to grant summary judgment where there is no such issue and on the substantive law the movant is entitled to judgment. *Hamilton v. Smith*, 773 F.2d 461 (2d Cir.1985). The moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which entitle him to judgment as a matter of law. *Katz v. Goodyear Tire & Rubber Company*, 737 F.2d 238, 244 (2d Cir.1984); *See* 2 J. Moore, A. Vestal, P. Kurkland, Moore's Federal Practice and Procedure § 17.10 at 17–34 (2d ed. 1987).

Henderson argues that none of the facts asserted in this proceeding are in dispute. He further argues that even if issues are in dispute, the debtor failed to enumerate sufficiently these issues in its 13H statement, prepared pursuant to Local Bankruptcy Rule 13(h), and such facts are therefore deemed admitted.

As stated in the discussion of facts, this court finds several issues of fact, enumerated above, are disputed by the parties.

Both Henderson and the debtor filed with their pleadings a 13H statement pursuant to Local Bankruptcy Rule 13(h). Local Bankruptcy Rule 13(h) states,

Summary Judgment. On any motion for summary judgment pursuant to Bankruptcy Rule 7056, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion.

The papers opposing a motion for summary judgment shall include a separate,

---

**1.** Even if the issue of rescission is decided in the context of the facts presented in the pleadings, it is unlikely rescission would be granted. The court does not perceive nor has it been established that the debtor has acted fraudulently or in bad faith in performing or failing to perform its obligations under this contract. *See Nolan v. Sam Fox Publishing Co., Inc.*, 499 F.2d 1394 (2d Cir.1974). Nor is the debtor's failure to pay the outstanding royalties to the plaintiff necessarily a material breach of the contract. *Nolan v. Sam Fox Publishing Co., Inc.*, 499 F.2d 1394 (2d Cir.1974) (Where the plaintiff composer did not receive 74% of the royalties due him, the court held rescission of the contract could not be justified). Though the outstanding royalties owed in this case could equal up to 90% of the total royalties owed, the intervening filing of a petition in bankruptcy on June 25, 1975, and the imposition of the automatic stay prohibit the debtor from paying the royalties since the inception of the bankruptcy. Therefore, the question of material breach may have to be determined based upon the amount owed to the debtor prior to the bankruptcy filing. Henderson relies on an old case, *De Mille v. Casey*, 121 Misc. 78, 201 N.Y.S. 20 (S.Ct.N.Y.1921), in which the court permitted the termination of a contract where the defendant had defaulted on a substantial portion of the bi-weekly royalty payments. However, the contract in *De Mille* provided for reversion upon non-payment of the royalties. Unlike the contract in *De Mille v. Casey*, 121 Misc. 78, 201 N.Y.S. 20 (S.Ct.N.Y.Co. 1921), Henderson's contract with the debtor does not have an automatic reversion of rights and obligations upon non-payment. Therefore, rescission is not warranted on this basis.

short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

The debtor specifically enumerated the allegations asserted by Henderson which it contests and has complied with the requirments of Rule 13(h). None of the facts in dispute are deemed admitted.

Accordingly, Henderson's motion and the debtor's cross motion for summary judgment seeking, respectively, a declaration that the contract was terminated by Stein and Day's acknowleged failure to make the royalty payments and failure to make a second printing of the book, or a material and willful breach of the contract, or a declaration that the plaintiff's termination of the contract be invalidated, must be denied in light of the existence of genuine issues of material fact.

### Property of the estate

■ Henderson asserts that the royalties owed to him under the publishing contract from the subsidiary agreements entered into by the debtor with Berkley, Doubleday and other third parties are earmarked for payment to him and are in the nature of a constructive trust to be transferred to him as a third-party beneficiary of the subsidiary agreements. The fact that royalties are owed in a specific amount is disputed by the parties. However, assuming a portion of the past due royalties are not disputed, Henderson seeks to acquire the funds as a third-party beneficiary claiming, in effect, that the funds are "earmarked" for payment to him, thereby allowing him to circumvent the automatic stay provisions of 11 U.S.C. § 362.

Henderson relies on a recently decided District Court case, *Septembertide Publishing v. Stein and Day, Inc and New American Library*, No. 86 Civ. 5487 (S.D. N.Y. October 13, 1987) [Available on WESTLAW, 1987 WL 18660], in which the debtor was a defendant in an action filed by Septembertide who was seeking (1) damages of $125,000 plus other royalty and subsidiary right payments for breach of contract by Stein and Day, Inc; (2) a declaration that all Stein and Day's rights had been terminated by Septembertide; (3) damages for the full amount of the remaining advances under the paperback, or in the alternative, for at least two-thirds of those payments claiming anticipatory breach of contract by New American Library ("NAL"); (4) damages under the paperback agreement on the theory that Septembertide was the third-party beneficiary of the contract between NAL and Stein and Day.

It appears the relief requested by Henderson is substantially the same as that requested by Septembertide. However, the procedural posture and the disposition of the royalty payments differ greatly in each of these actions.

Prior to Septembertide's initiation of its proceeding against Stein and Day, Inc., NAL and Bookcrafters U.S.A., Inc., Bookcrafters had received an assignment of the subsidiary contract between NAL and Stein and Day, Inc., wherein the contract provided that two-thirds of the royalties paid to Stein and Day were to be paid to Septembertide. Thereafter, all payments under the NAL contract were paid to Stein and Day who forwarded them to Bookcrafters pursuant to the terms of the assignment. *Septembertide Publishing v. Stein & Day*, No. 86 Civ. 5487, slip op. at 2.

Septembertide attempted to have NAL pay the royalties owed directly to its company. However, NAL refused and continued to make payments to Stein and Day. Ultimately, after Bookcrafters filed a counterclaim against Stein and Day alleging that as a secured creditor of Stein and Day, its right to the NAL payments was superior to that of Septembertide, NAL brought an interpleader action and placed all payments thereon in escrow. *Septembertide Publishing v. Stein & Day*, No. 86 Civ. 5487, slip op. at 2.

The court in *Septembertide* held Septembertide was a third-party beneficiary of the

subsequent contract with NAL based on the preexisting duty owed by Stein and Day. *Septembertide Publishing Co., Inc.,* No. 86 Civ 5487, slip op. at 4. Regarding payment of the past due royalties, the court found that Stein and Day was basically an incidental party to the Septembertide cause of action. *Septembertide Publishing v. Stein & Day,* No. 86 Civ. 5487, slip op. at 4. Upon judgment, Septembertide would proceed against Bookcrafters for its past due royalties and against the escrow account. Stein and Day would not have a judgment levied against its property. The payments by NAL were not property of Stein and Day's estate under 11 U.S.C. § 541 because it assigned its interest in the funds to Bookcrafters and the balance of the funds not paid to Bookcrafters was deposited in an escrow account. The debtor may only assert power over the royalties for the benefit of Bookcrafters as a result of the assignment of the subsidiary contract.[2] Stein and Day retained no control over the use of the funds. Therefore, the court did not impose the automatic stay on these funds pursuant to 11 U.S.C. § 362. *Septembertide Publishing v. Stein & Day,* No. 86 Civ. 5487, slip op. at 4. *See Price & Pierce International Inc., v. Spicers International Paper Sales, Inc.* 50 B.R. 25 (S.D.N.Y.1985) (In an interpleader action, claimant which had filed petition in bankruptcy applied to stay action pursuant to bankruptcy code, the court held that claimant's filing did not subject action to automatic stay).

The debtor does not dispute Henderson's allegation that he is a third-party beneficiary of the subsidiary agreements. Therefore, Henderson is a third-party beneficiary of the subsidiary contracts between the debtor and third parties, and more specifically, between the debtor, Doubleday and Berkley.

Any third party to whom a promisee owes any duty, whether or not pecuniary, may be a third-party beneficiary of a contract to perform that duty. *United States v. Ogden Technology Laboratories, Inc.,*

406 F.Supp. 1090, 1092 (E.D.N.Y.1973). If the terms of a contract require the conferring of a benefit on a third person, such benefit is to be considered as contemplated by the parties and invokes a third-party beneficiary right, even though the major motivation for the contract may be the parties' own advantage. *United States v. Ogden,* 406 F.Supp. at 1092.

However, unlike the situation in the Septembertide case, the royalties are paid to the debtor by the third parties pursuant to these subsidiary contracts. The debtor did not assign the Henderson/debtor contract to a third party nor are funds being paid into an escrow account.

Based upon the distinguishable facts in this case, the debtor asserts the royalties owed to Henderson, in the possession of the debtor, are property of the estate pursuant to 11 U.S.C. § 541.

11 U.S.C. § 541 describes property of a debtor's estate as including:

\*    \*    \*    \*    \*    \*

(6) Proceeds, product, offspring, rents, and or profits of or from property of the estate, except such as are earnings performed from services performed by an individual debtor after the commencement of the case.

The royalties paid to the debtor by Doubleday, Berkley or other third parties pursuant to a subsidiary agreement entered into under the Henderson contract, are property of the debtor's estate in that they are proceeds and profits derived from and paid directly to the debtor and are property of the estate which the debtor retains. However, in this action the plaintiff asserts that the funds are, in effect, "earmarked" for payment to him as a third party beneficiary of the subsidiary contracts and pursuant to the terms of payment of royalties under the contract and are therefore not property of the debtor's estate.

Funds which are in the possession of the debtor may be "earmarked" for a specific debtor and be excluded from the property of the estate. Property which is not includ-

---

**2.** 11 U.S.C. § 541(b) states that "[p]roperty of the estate does not include any power that the debtor may only exercise solely for the benefit of any other party but the debtor."

ed in the debtor's estate is described in 11 U.S.C. § 541(b). Section 541(b) states:

(b) Property of the estate does not include–

(1) any power that the debtor may only exercise solely for the benefit of an entity other that the debtor; ...

Funds do not become property of the debtor if the debtor transfers the funds as a conduit between an original transferor and an ultimate transferee. *In re Conard Corp.*, 806 F.2d 610 (5th Cir.1986). However, where funds are not specifically segregated by the debtor or placed in a special account or trust for the creditor, the money is not sufficiently earmarked to justify payment to that creditor. *Drabkin v. District of Columbia*, 824 F.2d 1102, 1103–04 (D.C. Cir.1987).

The debtor did not segregate the funds owed to Henderson from its other property nor was it prohibited from co-mingling these funds with its other cash. Under the contract the debtor is required to accompany the semi-annual accounting with the royalties owed to Henderson. The contract is silent as to what the debtor may do with the funds if it receives royalties in the interim. In addition, pursuant to the terms of the Henderson contract, the debtor may set aside a reserve for the potential return of books sold. The debtor retains control and use of the funds as part of its estate. Therefore, the funds are not required to be, nor were they earmarked, for Henderson and are property of the estate pursuant to 11 U.S.C. § 541 subject to the automatic stay provisions of 11 U.S.C. § 362.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. Genuine issues of fact exist which preclude a judgment on the pleadings. Accordingly, plaintiff's motion for summary judgment is denied.

3. Royalties owed to plaintiff, in the possession of the debtor, are property of the estate as defined in 11 U.S.C. § 541 and are subject to the automatic stay provisions under 11 U.S.C. § 362.

4. The debtor's cross-motion for summary judgment invalidating the plaintiff's unilateral termination of the contract is denied pending an evidentiary hearing.

SETTLE ORDER on notice in accordance with the foregoing Findings of Fact and Conclusions of Law.