**Terry GNAZZO, Plaintiff–Appellant,**

v.

**G.D. SEARLE & CO., Defendant–Appellee.**

**No. 1077, Docket 91–9221.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1992.

Decided Aug. 21, 1992.

Michael D. Neubert, New Haven, Conn. (Laura B. Frankel, Updike, Kelly & Spellacy, P.C., New Haven, Conn., David K. Jaffe, Eisenberg, Anderson, Michalik &

Lynch, New Britain, Conn., of counsel), for plaintiff-appellant.

Francis H. Fox, Boston, Mass. (Richard L. Burpee, Vicki V. Bonnington, Bingham, Dana & Gould, Boston, Mass., Jeffrey L. Williams, Hebb & Gitlin, Hartford, Conn., of counsel), for defendant-appellee.

Before: PIERCE, ALTIMARI, Circuit Judges, and SWEET, District Judge.*

PIERCE, Circuit Judge:

Plaintiff Terry Gnazzo appeals from a judgment entered in the United States District Court for the District of Connecticut, Peter C. Dorsey, *Judge*, granting defendant G.D. Searle & Co.'s motion for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that plaintiff's action was time-barred by the three-year statute of limitations applicable to her product liability action. *See* Conn.Gen.Stat. § 52–577a (1990). We affirm the judgment of the district court.

Judge Sweet dissents in a separate opinion.

## BACKGROUND

On November 11, 1974, Gnazzo had a Cu–7 intrauterine device ("IUD") inserted in her uterus for contraceptive purposes. The IUD was developed, marketed and sold by G.D. Searle & Co. ("Searle"). When Gnazzo's deposition was taken, she stated that her doctor had informed her that "the insertion would hurt[,] but not for long," and that she "would have uncomfortable and probably painful periods for the first three to four months." On October 11, 1975, Gnazzo found it necessary to return to her physician due to excessive pain and cramping. During this visit she was informed by her doctor that he .thought she had Pelvic Inflammatory Disease ("PID"). She recalled that he stated that the infection was possibly caused by venereal disease or the use of the IUD. The PID was treated with antibiotics and cleared up shortly thereafter. Less than one year la-

ter, Gnazzo was again treated for an IUD-associated infection. This infection was also treated with antibiotics. Gnazzo continued using the IUD until it was finally removed in December of 1977.

Following a laparoscopy in March of 1989, Gnazzo was informed by a fertility specialist that she was infertile because of PID-induced adhesions resulting from her prior IUD use. Subsequent to this determination, and at the request of her then-attorneys, Gnazzo completed a questionnaire dated May 11, 1989. In response to the following question, "[w]hen and *why* did you first suspect that your IUD had caused you *any* harm?", Gnazzo responded "sometime in 1981" and explained:

> I was married in Apr. 81 so I stopped using birth control so I could get pregnant—nothing ever happened (of course) then I started hearing [and] reading about how damaging IUD's could be. I figured that was [the] problem however my marriage started to crumble so I never persued [sic] the issue....

On May 4, 1990, Gnazzo initiated the underlying action against Searle. In an amended complaint, she alleged that she had suffered injuries as a result of her use of the IUD developed by Searle. Searle moved for summary judgment on the ground that Gnazzo's claim was time-barred by Connecticut's three-year statute of limitations for product liability actions. Searle argued, *inter alia*, that Gnazzo knew in 1981 that she had suffered harm caused by her IUD. Gnazzo contended that her cause of action against Searle accrued only when she learned from the fertility specialist that the IUD had caused her PID and subsequent infertility.

In a ruling dated September 18, 1991, the district court granted Searle's motion for summary judgment on the ground that Gnazzo's claim was time-barred by the applicable statute of limitations. In reaching this result, the court determined that Connecticut law provided no support for Gnazzo's contention that she should not have

---

* The Honorable Robert W. Sweet, United States District Judge for the Southern District of New York, sitting by designation.

been expected to file her action until she was told of her infertility and the IUD's causal connection. This appeal followed.

## DISCUSSION

On appeal, Gnazzo contends that the district court improperly granted Searle's motion for summary judgment because a genuine issue of material fact exists as to when she discovered, or reasonably should have discovered, her injuries and their causal connection to the defendant's alleged wrongful conduct.

Under our well-established standards, we review the district court's grant of summary judgment against Gnazzo *de novo*. *Trans–Orient Marine v. Star Trading & Marine*, 925 F.2d 566, 572 (2d Cir.1991). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We consider the record in the light most favorable to the non-movant. *See Trans–Orient Marine*, 925 F.2d at 572. However, the non-movant " 'may not rest upon the mere allegations or denials of [her] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citations omitted).

■ Under Connecticut law, a product liability claim must be brought within "three years from the date when the injury ... is first sustained or discovered or in the exercise of reasonable care should have been discovered...." Conn.Gen.Stat. § 52–577a. "In Connecticut, a cause of action accrues when a plaintiff suffers actionable harm." *Champagne v. Raybestos–Manhattan*, 212 Conn. 509, 562 A.2d 1100, 1107 (1989) (citation omitted). "Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." *Id.*

Gnazzo contends that "[t]he mere occurrence of a pelvic infection or difficulty in becoming pregnant does not necessarily re-

sult in notice to the plaintiff of a cause of action." Thus, she maintains that her cause of action did not accrue until 1989 when the fertility specialist informed her both that she was infertile and that this condition resulted from her previous use of the IUD.

■ Under Connecticut law, however, "the statute [of limitations] begins to run when the plaintiff discovers *some form* of actionable harm, not the fullest manifestation thereof." *Lambert v. Stovell*, 205 Conn. 1, 529 A.2d 710, 713 (1987) (emphasis in original); *see Barnes v. Schlein*, 192 Conn. 732, 473 A.2d 1221, 1224 n. 7 (1984) ("Although an expert opinion may lead to discovery of an 'actionable harm[,]' ... it does not follow that a plaintiff cannot reasonably discover an injury absent verification by a qualified expert." (citation omitted)).

■ Therefore, as Gnazzo's responses to the questionnaire indicate, she suspected "sometime in 1981" that the IUD had caused her harm because she had been experiencing trouble becoming pregnant and had "started hearing [and] reading about how damaging IUD's could be ... [and had] figured that was [the] problem...." Thus, by her own admission, Gnazzo had recognized, or should have recognized, the critical link between her injury and the defendant's causal connection to it. In other words she had "discover[ed] or should have discover[ed] through the exercise of reasonable care, that ... she ha[d] been injured and that [Searle's] conduct caused such injury." *Champagne*, 562 A.2d at 1107. However, as Gnazzo acknowledged in the questionnaire, she did not pursue the "issue" at the time because of her marital problems. Thus, even when viewed in the light most favorable to Gnazzo, the non-moving party, we are constrained to find that she knew by 1981 that she had "*some form* of actionable harm." *Lambert*, 529 A.2d at 713. Consequently, by the time she commenced her action in 1990, Gnazzo was time-barred by the Connecticut statute of limitations.

Since we have determined that Gnazzo's cause of action commenced in 1981, we need not address Searle's additional contention that Gnazzo's awareness in 1975 of her PID and her purported knowledge of its causal connection to the IUD commenced the running of the Connecticut statute of limitations at that time.

We are sympathetic to Gnazzo's situation and mindful that the "unavoidable result we reach in this case is harsh." *Burns v. Hartford Hospital*, 192 Conn. 451, 472 A.2d 1257, 1261 (1984). Nevertheless, we are equally aware that "it is within the [Connecticut] General Assembly's constitutional authority to decide when claims for injury are to be brought.... Where a plaintiff has failed to comply with this requirement, a court may not entertain the suit." *Id.*

## CONCLUSION

The judgment of the district court is affirmed.

SWEET, District Judge, dissenting.

I respectfully dissent. The existence of genuine issues of fact as to when Gnazzo "discovered or in the exercise of reasonable care should have [discovered]" her injury should have led the district court to deny Searle's motion for summary judgment.

I have no dispute with the majority's articulation of the elements of the applicable Connecticut statute of limitations. For statute of limitations purposes, a cause of action accrues when a plaintiff suffers actionable harm. *Champagne v. Raybestos–Manhattan, Inc.*, 212 Conn. 509, 521, 562 A.2d 1100, 1107 (1989). Actionable harm occurs when the plaintiff discovers, or should have discovered through the exercise of reasonable care, both that she has suffered physical harm and that there is a causal connection between that harm and the allegedly wrongful conduct of the defendant. *Id.; Hamilton v. Smith*, 773 F.2d 461, 464 (2d Cir.1985). Nevertheless, I disagree that, applying this standard to these facts, a trier of fact could not find that Gnazzo brought this action within the three-year limitations period.

What the majority would do here today is very much like that which this Court refused to do in *Hamilton v. Smith*, 773 F.2d 461 (2d Cir.1985). At issue in *Hamilton* was the interpretation of the analogous Connecticut limitations period for bringing suit in a medical malpractice action.

The plaintiff's decedent ("Hamilton") injured his thumbnail in 1956. In 1959, the defendant, a Dr. Smith, treated him for the injury, diagnosed the problem as chronic paronychia, an inflammatory infection, and excised part of the nail. In 1965, Hamilton was admitted to the hospital where Dr. Smith operated on his thumb. After analyzing a tissue sample taken from the thumb, the hospital pathologist reported to Dr. Smith that Hamilton's condition was paronychia.

Lumps developed on Hamilton's thumb, and in 1973 a doctor in Florida biopsied the tissue and found cancer. In 1975, the thumb was amputated. The cancer spread over the next three years. In 1979, Hamilton learned that slides of the tissue samples tested in 1965 kept by the hospital revealed that the cancer was evident when the tissue was examined in 1965, thus indicating that Dr. Smith had misdiagnosed his condition. Due to the spread of the cancer, Hamilton died in 1980, after which his wife brought an action against Dr. Smith and the hospital for negligent misdiagnosis. *Id.* at 462–63.

The district court granted summary judgment for the defendant, finding that the limitations clock began to run when Hamilton learned that he had cancer in 1975, four and one-half years prior to his wife's commencement of the action. This Court reversed, holding that by inquiring only as to when Hamilton discovered his physical injury, the district court had improperly construed the meaning of the statute. Under a proper construction of the statute, according to this Court, the limitation starts to run "when the plaintiff discovers *both* that he has suffered *physical harm and* the *causal connection* between that harm and the alleged negligent con-

duct of the defendant." *Id.* at 464 (emphasis added). The Court wrote that:

> With discovery rules, the limitations period clock does not begin to tick as long as the plaintiff is unaware of the right he seeks to assert.... Under the district court's interpretation of the injury in the instant case, the statute would start tolling plaintiff's rights when the plaintiff learned of his physical injury, even if he had not yet discovered its cause. So read, the limitations period for bringing suit might well be over before a plaintiff even knew that he had a cause of action. *This scenario is one that the discovery rule was designed to avoid ....* [I]t is more consistent with the general purpose of a discovery rule to commence the limitation period only when the plaintiff discovers the legal injury.

*Id.* at 465 (emphasis added).

In *Hamilton,* the potential issue of fact precluding summary judgment related to the "causal connection" element of the "discovery" equation. In this case, by contrast, there are genuine issues of fact as to the other half of the equation. Namely, it is unclear on the facts that were before the district court whether Gnazzo discovered or should have discovered her physical injury—her infertility—outside the three-year limitations period.

The district court and the majority regard Gnazzo's questionnaire as dispositive of any dispute as to whether she discovered or should have discovered in 1981 that she was injured by Searle's Cu-7. Nevertheless, drawing all inferences and resolving all ambiguities in favor of Gnazzo, as a court must on summary judgment, *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991), I find neither this statement nor any other evidence submitted on the motion sufficient to warrant summary judgment dismissing the complaint.

As a preliminary matter, the pivotal questionnaire "admission" is ambiguous by its own terms. Gnazzo states that

> I was married in Apr. 1981 so I stopped using birth control so I could get pregnant—nothing ever happened (of course) then I started hearing and reading about how damaging IUD's could be. I figured that was the *problem* however my marriage started to crumble so I never pressed the issue.

Joint App. at 171 (emphasis added). While the context of the statement makes understandable the majority's inference that Gnazzo discovered her injury and its causal nexus to Searle in 1981, it is also possible that Gnazzo was referring to some other "problem" associated with the Cu-7. Given the procedural posture of this motion, the district court should have resolved this ambiguity in favor of Gnazzo.

Even if the "problem" to which Gnazzo was referring was her *difficulty* conceiving in 1981, however, that is all the undisputed facts establish the problem, as "discovered" by Gnazzo, to have been. Difficulty becoming pregnant is not infertility.

Furthermore, because it is unclear on the facts when the injury actually occurred, there is a factual issue as to whether Gnazzo "in the exercise of reasonable care should have ... discovered" her inability to become pregnant prior to 1989. As late as June 1986 and October 1987, when Gnazzo sought fertility counseling, she was informed that the general findings of a post-coital test were "excellent," and that a hysterosalpingogram showed that she had a normal uterus and oviducts and that her left oviduct was open or patent. In the absence of facts establishing that these were misdiagnoses or that the methodology of these examinations was incomplete,[1] an open question of fact remains to be tried. *Cf. Burns v. Hartford Hosp.,* 192 Conn. 451, 472 A.2d 1257, 1260 (1984) ("Dr. Cooke's alleged misdiagnosis, however, did

---

1. Dr. Desper testified in her deposition that she was aware of Gnazzo's bouts with PID and use of the IUD. *See* Joint App. at 143–44, 146–47. She also testified that she knew that PID could affect fertility. Given this knowledge, and Gnazzo's specific, fertility-related reason for consulting Dr. Desper, it is reasonable to infer that Dr. Desper's examinations included a consideration of whether PID or IUD related problems existed.

not toll the statute of limitations as it applied to Hartford Hospital.").

This court itself has stated that "[w]e do not think it the purpose of this part of Connecticut's statute of limitations that the game be over before a plaintiff has had his innings." *Hamilton*, 773 F.2d at 462. By affirming the district court's holding that Gnazzo "discovered" her infertility in 1981, the Court is condoning the use of this statute for precisely that purpose.