## ETHEL BARNES *v.* ALLEN G. SCHLEIN
## (11757)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued February 1—decision released April 17, 1984

*John J. McNamara,* for the appellant (plaintiff).

*Richard F. Oburchay,* with whom, on the brief, was *William H. Boyd,* for the appellee (defendant).

PER CURIAM. The plaintiff appeals from a judgment for the defendant, rendered after the trial court concluded that the plaintiff's medical malpractice suit was

barred by the statute of limitations and granted the defendant's motion for summary judgment. In her appeal, the plaintiff claims the court erred in granting the motion because (1) a prior motion for summary judgment had been denied, thus establishing the law of the case; (2) the court applied the wrong statute of limitations, and; (3) there existed a genuine issue of fact concerning the date when the injury was discovered.

The facts, undisputed by either party, are as follows: The plaintiff was injured as the result of a slip and fall on December 20, 1972. She was taken to Park City Hospital in Bridgeport, where she was treated by the defendant, Allen Schlein, an orthopedic surgeon. He performed an operation on the plaintiff on December 20, 1972, and again on February 20, 1973.

Schlein informed the plaintiff in April, 1973, that she needed extensive physical therapy and further surgery to relieve her from the pain she was still experiencing. Thereafter, the plaintiff sought and received a second opinion from another physician, who performed surgery on April 16, 1973.

On December 16, 1975, the plaintiff filed suit against the defendant, alleging that Schlein had been negligent in treating her and had caused her to endure further surgery as well as extreme pain and suffering.

On June 22, 1982, the defendant filed a motion for summary judgment similar to an earlier motion that had been denied in October, 1978. The court, upon review of the newly filed motion, concluded that there was no genuine issue of fact as to whether the action was brought more than two years after the discovery of the injury and granted the defendant's motion.

I

The plaintiff claims that, although denial of a motion for summary judgment is an interlocutory order, it

nevertheless becomes the law of the case and can be overturned only if good reason exists to entertain a renewed motion.

"The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. See 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478." *Breen* v. *Phelps,* 186 Conn. 86, 99, 439 A.2d 1066 (1982). We have declared that, although a judge should not lightly depart from a prior ruling on a motion before the same or a different judge, the prior ruling is not binding. "From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling. 18 Wright, Miller & Cooper, supra, § 4478; *Parmelee Transportation Co.* v. *Keeshin,* 292 F.2d 794, 797 (7th Cir.), cert. denied, 368 U.S. 944, 82 S. Ct. 376, 7 L. Ed. 2d 340 (1961). In an appeal to this court where views of the law expressed by a judge at one stage of the proceedings differ from those of another at a different stage, 'the important question is not whether there was a difference but which view was right.' *Dawson* v. *Orange,* 78 Conn. 96, 129, 61 A. 101 (1905)." *Breen* v. *Phelps,* supra, 100. See also *Schwarzschild* v. *Martin,* 191 Conn. 316, 325, 464 A.2d 774 (1983).

## II

The plaintiff next claims that the trial court should have applied the statute of limitations for actions concerning implied contract[1] and not the statute of limitations concerning malpractice actions.[2]

---

[1] General Statutes § 52-576 provides in pertinent part: "(a) No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

[2] General Statutes § 52-584 provides: "No action to recover damages for

General Statutes § 52-584 provides in pertinent part that "[n]o action to recover damages for injury to the person, or to real or personal property, caused by . . . *malpractice of a physician* . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . . " (Emphasis added.) It is clear that all actions for *malpractice* fall under the ambit of General Statutes § 52-584. Whether the plaintiff's cause of action is one for malpractice depends upon the definition of that word and the allegations of the complaint. See *Staples* v. *Lucas,* 142 Conn. 452, 456, 115 A.2d 337 (1955); *Camposano* v. *Claiborn,* 2 Conn. Cir. Ct. 135, 196 A.2d 129 (1963).

Malpractice is commonly defined[3] as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . ." Webster, Third New International Dictionary; Black's Law Dictionary (5th Ed. 1979); see *Camposano* v. *Claiborn,* supra. A fair reading of the complaint reveals that the gravamen of the

---

injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[3] General Statutes § 1-1 provides: "(a) In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

suit was the alleged failure by the defendant to exercise the requisite standard of care.[4] Her complaint is absolutely barren of any allegation that the defendant breached any contractual agreement made with her. Cf. *Camposano* v. *Claiborn,* supra (physician's assurance that operation would result in only hairline scars of a minor nature governed by six year statute of limitations). The court did not err in holding that General Statutes § 52-584 governed the plaintiff's cause of action as set out in her complaint.

## III

In her final claim of error, the plaintiff claims that a material fact was in dispute and that the defendant did not clearly establish the absence of all genuine issues of material fact. In order to address this claim adequately, we must first set out the evidence presented to the court by the defendant.

The defendant filed, along with his motion for summary judgment, his own affidavit and part of the plaintiff's deposition. In his affidavit, he averred that the last time he had treated the plaintiff was on April 5, 1973. In the deposition, the plaintiff stated that she knew that something was wrong with her leg when she consulted with a second physician in April.[5] She fur-

[4] In the fourth paragraph of her complaint, the plaintiff alleges: "[T]he Defendant made repeated examinations of the plaintiff for both physical therapy, medical and post-surgical care purposes, but in doing so did not use the care and skill normally used by physicians engaged in medical practice in the Bridgeport, Connecticut area, nor did the Defendant perform the aforementioned surgical procedures with the care and skill required to insure proper healing of the Plaintiff's injuries."

In paragraphs six through nine, the plaintiff alleges that "[a]s a consequence of the Defendant's negligence" she was forced to undergo corrective surgery and suffered pain and injury.

[5] In her deposition, the plaintiff engaged in the following colloquy:

"Q. Well, then, why did you go to Dr. Truchly?

"A. Because of what Dr. Schlein said to me the last time he spoke to me. 'You'd have to have therapy for about a year. And, then, you're going

ther stated that prior to her third operation on April 16, 1973, she had decided to sue Schlein.[6] Although the court had these facts before it, the plaintiff failed to present any evidence to dispute them in the counter-affidavit filed in her behalf.[7]

to have to have an arthritic operation.'

"As a layman, I never heard of that term, arthritic operation.

"And then, I thought that was, 'Oh, oh!' That's when I called Bridgeport Hospital. I went out to see Dr. Truchly the very same day, I believe.

"Q. What did he recommend?

"A. He recommended the open reduction operation.

"Q. What do you mean an open reduction operation?

"A. He rebroke my bones and reset them. Then, you work from—you cut on both sides of the ankle.

"Q. Why did he rebreak your bones and reset them?

"A. Because something was wrong.

"Q. What was that? What was wrong?

"A. My leg was not healed."

[6] Further along in the deposition the following colloquy took place concerning a conversation between the plaintiff and her attorney:

"Q. Did he agree that you should sue Dr. Schlein when you first discussed it prior to April 15, 1973?

"A. Before my operation in Bridgeport Hospital I think we did discuss it to the point where it could be a suit against Dr. Schlein.

"Q. He advised you it could be a suit?

"A. Yes. He advised me. That would be the word for it. We discussed the procedure along that route.

"Q. That he would sue Dr. Schlein?

"A. Yes.

"Q. That was prior to the April 15, 1973 operation?

"A. That's right.

"Q. Did you ever discuss it with Dr. Truchly?

"A. The suit I did not discuss with Dr. Truchly. What had happened to me prior to seeing Dr. Truchly, of course, I discussed it with him. It happened to me.

"Q. Did you discuss the possibility of a claim against Dr. Schlein with Dr. Truchly?

"A. I don't think we discussed it as lawyers would discuss it. I think we discussed it as far as patient and doctor, what happened."

[7] The plaintiff's counsel filed his own affidavit—a practice we do not encourage and strongly disapprove; see *Dorazio* v. *M. B. Foster Electric Co.,* 157 Conn. 226, 228–29, 253 A.2d 22 (1968); confirming the facts as revealed by the plaintiff's deposition, and further averring that the suit had not been initiated earlier because the plaintiff was unable to find a physician who would state that Schlein's treatment in this case had been negli-

" 'A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. Practice Book § 384; *Yanow* v. *Teal Industries, Inc.,* 178 Conn. 262, 268, 422 A.2d 311 (1979); *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 377–78, 260 A.2d 596 (1969).' *Bartha* v. *Waterbury House Wrecking Co.,* 190 Conn. 8, 11, 459 A.2d 115 (1983). See *Herman* v. *Endriss,* 187 Conn. 374, 446 A.2d 9 (1982). Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. *Bartha* v. *Waterbury House Wrecking Co.,* supra, 11–12; *Farrell* v. *Farrell,* 182 Conn. 34, 38, 438 A.2d 415 (1980); *Rusco Industries, Inc.* v. *Hartford Housing Authority,* 168 Conn. 1, 5, 357 A.2d 484 (1975). It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue." *Burns* v. *Hartford Hospital,* 192 Conn. 451, 455, 472 A.2d 1257 (1984).

General Statutes § 52-584 requires a plaintiff to file suit within two years of discovering the injury or be forever barred from suit. *Burns* v. *Hartford Hospital,* supra. The uncontradicted testimony of the plaintiff at

gent. The plaintiff's counsel claimed both at the hearing on the motion and at oral argument on this appeal that only when a plaintiff secures a physician's opinion of whether malpractice has occurred does the statute of limitations begin to run on a cause of action for medical malpractice. The operative language in the statute unambiguously provides, however, that "[n]o action to recover damages . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered." Although an expert opinion may lead to discovery of an "actionable harm"; *Burns* v. *Hartford Hospital,* 192 Conn. 451, 460, 472 A.2d 1257 (1984); it does not follow that a plaintiff cannot reasonably discover an injury absent verification by a qualified expert.

her deposition reveals that she knew in April, 1973, that she had suffered "some form of actionable harm." *Burns* v. *Hartford Hospital,* supra. Despite this knowledge she waited until December 16, 1975, two and one half years later, to file suit. There was no genuine dispute as to these facts. The court, therefore, correctly concluded that the defendant was entitled to summary judgment.

There is no error.