[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
CT Page 8385
The defendants, Veterans Memorial Medical Center ("VMMC"), Stanley Parker, Dellene Quintillani, and David Zemke, have moved to strike numerous counts in the plaintiffs' forty-four count Revised Complaint dated January 21, 1998.
Facts
Plaintiff John Doe 1 alleges that he was an outpatient at the defendant Veterans Memorial Medical Center where he received treatment via its therapists, defendants Stanley Parker, Dellene Quintillani, and David Zemke, as part of their Sex Offender treatment program. He alleges that he sought counseling in August 1993 "because he believed that he had engaged in sexually inappropriate behavior while play wrestling with his fully clothed nine year old granddaughter, the daughter of Doe 5." (Count One ¶ 11). He took part in this group therapy treatment voluntarily between September 1993 and March 1994 (Count One ¶ 27), continuing with the program as part of his Accelerated Rehabilitation from that time until February 1996. He had been charged with Sexual Assault, Fourth Degree and Risk of Injury to a Child arising from his behavior with his granddaughter, whereupon the court order required his completion of the Offender Treatment Program, with supervised visits with his granddaughter at the discretion of her mother. (Count One ¶¶ 27-30).
Doe 1 alleges in Count One and throughout his complaint that the defendant therapists berated him and encouraged other members of his therapy group to do so. He alleges that therapist Quintillani threatened him with a report of probation violation, despite his revelation of a deep fear of incarceration, if he did not participate more aggressively and assertively in the program. Doe 1 alleges that the defendants prepared an inadequate history and evaluation of him, and that they failed to take into account his pre-existing Post Traumatic Stress Disorder, placing him in an unsuitable program which consisted of extreme and inappropriate measures. He further alleges that this conduct caused him to suffer depression, stress anxiety, and physical ailments including headaches and loss of tongue control.
The other Doe plaintiffs are identified as follows: Doe 2 is the wife of Doe 1. Does 3, 4, and 5 are their adult daughters. The daughters purport to bring their claims individually and on behalf of their minor children, who are not listed in the summons CT Page 8386 or identified by name or alias within the complaint.
Discussion of Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990); Blancato v. Feldspar Corp., 203 Conn. 34, 36,522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly probable under them. Dennisonv. Klotz, 12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich vSilverberg, 200 Conn. 367, 370, 511 A.2d 336 (1986).
Counts Four, Five, and Six
In these counts Doe 1 alleges that the defendants Parker, Quintillani and Zemke were reckless when they placed Doe 1 in an intensive, highly demanding, aggressive and abusive group therapy program during which they engaged in aggressive and confrontational tactics against Doe 1 thereby creating an "extreme and unreasonable risk that Doe 1 would suffer sever physical and psychological trauma."
"`There is a wide difference between negligence and a reckless disregard of the rights or safety of others, and a complaint should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on.' Brock v. Waldron, 127 Conn. 79, 81, 14 A.2d 713; Begley v. Kohl Madden Printing Ink Co., 157 Conn. 445, 450,254 A.2d 907; see Mooney v. Wabrek, 129 Conn. 302, 306, 307,27 A.2d 631. . .`Simply using the word `reckless' or `recklessness' is not enough.' Dumond v. Denehy, 145 Conn. 88, 91, 139 A.2d 58."Kostiuk v. Queally, 159 Conn. 91, 94, 267 A.2d 452 (1970). "There is a wide difference between negligence and a reckless disregard of the rights or safety of others, and a complaint should employ CT Page 8387 language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on." Dumond v. Denehy,145 Conn. 88, 91, 139 A.2d 58 (1958).
The allegation that the defendants' conduct created an extreme and unreasonable risk that Doe 1 would suffer severe harm clearly alleges something more than a deviation from the standard of care amounting to recklessness. Therefore, these counts should not be stricken. Obviously, proof of the reckless conduct alleged in these counts will require expert testimony and the plaintiffs may be subject to sanctions if their allegations of recklessness were made without a good faith belief that such testimony will be introduced at the trial.
Counts Ten, Eleven, and Twelve
In these counts Doe 2 alleges professional negligence against all three therapists. She alleges that she is the wife of Doe 1 and that representations to her by defendant Quintillani induced her to take part in "educational meetings" with all three defendants in order to learn to become an "informed supervisor" of her husband in order that her husband could see his grandchildren and attend family functions. Thereafter, the defendants allegedly increased the number of "information/educational sessions" which were required, breaching a standard of care as to reasonably prudent similar health care providers by unnecessarily requiring said education sessions and withholding permission for her husband to attend family gatherings and see his grandchildren.
A physician-patient relationship is a condition precedent for a cause of action for medical malpractice. Sheridan v. Quarrier,127 Conn. 279, 283 (1940). Sackter v St. Onge, No. CV91-0504004S (Apr. 14, 1993, Wagner, J.) 1993 Ct. Sup. 3729. In Stackter the court stated:
 The general hornbook rule is that there can be no actionable negligence on the part of a physician where there is no physician-patient relationship. Louisell and Williams, Medical Malpractice Matthew Bender (1988) 8.02. In Connecticut, malpractice has been defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied . . . in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services. . . . (Emphasis added.) Davis v Margolis, 215 Conn. 408, 415, CT Page 8388 576 A.2d 489 (1990), citing Barnes v. Schlein, 192 Conn. 732, 735, 473 A.2d 1221 (1984). . . . In the present case, the plaintiff alleges that defendants rendered medical services to Esther Sackter, not David Sackter, the plaintiff's decedent. We hold that only the patient or recipient of medical services would have a legally sufficient malpractice cause of action. Since it is clear that the plaintiff's decedent received no medical services from the defendants, plaintiff's complaint is legally insufficient and the motion to strike is granted.
In this case the plaintiffs have not alleged that anyone other than Doe 1 entered into a formal health care provider/patient relationship with the defendant therapists. (Complaint ¶¶ 11-22). Although the plaintiffs have alleged that the education/information sessions were really therapy sessions, it is clear from the other allegations that the sessions, however denominated, were directed at the care of Doe 1 and Doe 2 attended the sessions to enable her to assist in that care, and not as a patient herself. Therefore Counts Ten, Eleven and Twelve are ordered stricken.
Counts Sixteen, Seventeen, and Eighteen 
Doe 2 alleges infliction of emotional distress against all three therapists in these counts. Since there is an insufficient allegation of a patient/health provider relationship between Doe 2 and the defendant therapists, the court must analyze these counts as attempting to allege bystander emotional distress. Doe 2 incorporates the allegations of her previous counts regarding the requirement of educational sessions. She adds the allegation that the defendant therapists imposed these condition with knowledge that their requirements would and did cause her husband and her severe emotional and physical distress.
Bystander emotional distress was recognized as a cause of action by the Connecticut Supreme Court in Clohessy v. Bachelor,237 Conn. 31, 675 A.2d 852 (1996), which held that within certain limitations, a plaintiff could recover for emotional distress as a result of harm done to a third party, as follows:
 (1) the plaintiff is "closely related to the injury victim," (2) if the emotional injury of the plaintiff is caused by the "contemporaneous sensory perception of the event" causing injury to the victim, (3) if the injury to the victim results in death or serious bodily injury, and (4) if the plaintiff's emotional injury is serious, "beyond that CT Page 8389 which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." Id., 51-55.
In this case Doe 2 fails to allege both the third and fourth elements necessary to sustain such a cause of action. She has alleged neither serious physical injury to her husband nor debilitating emotional injury to herself. Therefore, Counts Sixteen, Seventeen, and Eighteen are ordered stricken.
Counts Nineteen Twenty, and Twenty-One
In these counts Doe 3, an adult daughter of Does 1 and 2, alleges professional negligence against all three therapists based on her attendance of two education sessions for the purpose of being an informed supervisor. She has not alleged any patient/health provider relationship between herself and the defendants. Therefore, these counts fail to state a cause of action for the same reasons set for with respect to Counts Ten, Eleven, and Twelve and are ordered stricken.
Counts Twenty-Two and Twenty-Three
Doe 3 purports to bring these two counts for negligent misrepresentation as to Parker and Quintillani on behalf herself and her minor child. There is no allegation that any representation was made to the minor child. The defendants have moved to strike these Counts as to the minor child.
Our Supreme Court has held that "`even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth.'" Williams Ford, Inc. v. Hartford Courant Co.,232 Conn. 559, 575, 657 A.2d 212 (1995). "The governing principles [of negligent misrepresentation] are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment. . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. . . ." (Citations omitted; internal quotation marks omitted.) Id.
A claim for negligent representation, then, by definition, requires reliance by the plaintiff on a representation heard by CT Page 8390 the plaintiff. The Motion to Strike Counts Twenty-Two and Twenty-Three as to the minor child is granted.
Counts Twenty-Four, Twenty-Five, and Twenty-Six
In these counts the plaintiffs allege that the defendant therapists imposed conditions and prohibitions on Doe 1 which they knew or should have known would cause him emotional distress and which they knew or should have known would cause Doe 3 and her child severe emotional distress. By piggybacking these related allegations, the plaintiffs are attempting to allege a claim for bystander emotional distress without meeting the requirements of Clohessy, as set forth with respect to Counts Sixteen, Seventeen and Eighteen above. Therefore, these counts are ordered stricken as to Doe 3 and her child. The plaintiffs' failure to name the child as a plaintiff provides an additional basis for striking these counts as to the child,
Counts Twenty-Seven and Twenty-Eight
In these counts Doe 4 alleges that she is the adult daughter of Doe 1 and claims professional negligence against Parker and Quintillani. As set forth above with respect to Counts Ten, Eleven, and Twelve, Doe 4 does not allege the requisite physician/patient relationship between herself and the therapists. Therefore, these Counts are stricken for the reasons set forth above as to Counts Ten, Eleven, and Twelve.
Counts Twenty-Nine and Thirty
In these counts Doe 4 and her minor children allege negligent misrepresentation against Parker and Quintillani even though there is no allegation that those therapists ever made and representations to the minor children of Doe 4. For the same reasons set forth with respect to Counts Twenty-Two and Twenty-Three above, these counts are ordered stricken as to the minor children of Doe 4.
Counts Thirty-One, Thirty-Two, and Thirty-Three
In these counts Doe 4 and her children attempt to allege a claim of negligent infliction of emotional distress which is actually a claim for bystander emotional distress which fails to meet the requirements of Clohessy. Therefore, these counts are ordered stricken. CT Page 8391
Counts Thirty-Four and Thirty-Five
In these counts Doe 5 alleges that she is the adult daughter of Doe 1 and claims professional negligence against Parker and Quintillani. As set forth above with respect to Counts Ten, Eleven, and Twelve, Doe 4 does not allege the requisite physician/patient relationship between herself and the therapists. Therefore, these Counts are stricken for the reasons set forth above as to Counts Ten, Eleven, and Twelve.
Counts Thirty-Six and Thirty-Seven
In these counts Doe 5 and her minor children allege negligent misrepresentation against Parker and Quintillani even though there is no allegation that those therapists ever made and representations to the minor children of Doe 5. For the same reasons set forth with respect to Counts Twenty-Two and Twenty-Three above, these counts are ordered stricken as to the minor children of Doe 5.
Counts Thirty-Eight and Thirty-Nine
In these counts Doe 5 and her children attempt to allege a claim of negligent infliction of emotional distress which is actually a claim for bystander emotional distress which fails to meet the requirements of Clohessy. Therefore, these counts are ordered stricken.
Count Forty-One
This count alleges negligence by VMMC in the selection and supervision of its counselors as to all plaintiffs and incorporates the allegations of malpractice as to all plaintiffs. This count is stricken as to everyone but Doe 1. The malpractice claims of all of the other plaintiffs are insufficient because they do not allege the requisite physician/patient relationship with the defendant therapists.
Count Forty-Two
This count alleges vicarious liability for the malpractice alleged by all Does. Since there are no facts giving rise to malpractice actions for anyone other than Doe 1, this claim is stricken as to the other Does. CT Page 8392
Count Forty-Three
This count incorporate all previous paragraphs of the complaint by reference and sounds in breach of contract. InBarnes v Schlein, 192 Conn. 732, 473 A.2d 1221 (1984) the
Connecticut Supreme Court stated:
 Malpractice is commonly defined as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . ." Webster, Third New International Dictionary; Black's Law Dictionary (5th Ed. 1979).
192 Conn. at 735.
Notwithstanding the complaint's allegation of the breach of a contract to properly perform medical services, the Court refused to apply the contract statute of limitations because it held that the allegation of breach of contract was merely a restatement of the negligence claim.
In Picarazzi v. Fichera, Judicial District of Fairfield at Bridgeport, CV930306212S, 1994 Ct. Sup. 12563, 13 CLR 96 (Dec. 12, 1994, Maiocco, J.) the Superior Court struck counts alleging a breach of contract which were merely reiterations of allegations sounding in negligence for medical malpractice. In a helpful review of Superior Court cases on this issue, the Court in Picarazzi stated:
 There appears to be two lines of Superior Court decisions regarding the relationship between a medical malpractice claim and a breach of contract claim. "To be separate from a malpractice claim, the plaintiff must allege that the defendant doctor assured or warranted a specific result, as opposed to a situation where the doctor makes a generalized statement that the result will be good. . . ." (citations omitted.) White v. Bridgeport Radiology Assoc., P.C., supra, 10 Conn. L. Rptr. No. 7 at 223. "The action in contract is based upon a failure to perform a special agreement." Malone v. Caldwell, 6 Conn. L. Rptr. 323, 324 (1992) (Wagner, J.), quoting Camposano v. Claiborn, 2 Conn. Cir. Ct. 135, 137, 196 A.2d 129 (1963). See also Lowery v. Metpath, Superior Court, judicial district of Hartford/New Britain at Hartford, CT Page 8393 DN 518788 (November 9, 1993) (Hennessey, J.).
 However, the other line of cases do not require a special agreement. A breach of contract case is "entirely separate from malpractice, even though they both, as here, may arise out of the same transaction. . . . The two courses of action are dissimilar as to theory, proof and damages recoverable." Camposano v. Claiborn, supra, 2 Conn. Cir. Ct. 137. "[T]he second count of the complaint [for breach of contract] should not be stricken. Two distinct causes of action may arise from one wrong. Hickey v. Slattery, 103 Conn. 716, 719 (1926)." Paggioli v. Manchester Memorial Hospital, 1 Conn. L. Rptr. 729, 729 (1990) (Allen, S. J.). See also Johnson v. Kaiser Foundation Health Plan, Superior Court, JD of New Haven at New Haven, DN 031241-S (May 18, 1994) (Gray, J.)
 This court believes that the former line of cases represent a better reasoned approach. By requiring a special agreement, these cases eliminate those cases where the plaintiff "has merely alleged that the defendant impliedly agreed to meet the requisite standard of care, or, in essence, impliedly agreed not to commit malpractice." Malone v. Caldwell, supra, 6 Conn. L. Rptr. 324-25 (granting a motion to strike a breach of contract claim that repeated the allegations of a medical malpractice claim.)
This court agrees with the court in Picarazzi that the better rule is that in order to state a separate cause of action where injuries are alleged to have resulted from the breach of a contract to render medical services, the plaintiff must allege a special agreement to achieve a particular result. In this case as in Malone v. Caldwell, supra and Picarazzi v. Fichera, supra, the plaintiff alleges no more than an agreement by the defendant therapists that they would adhere to the applicable standards of care. Such an agreement adds nothing to the allegations of medical malpractice. Therefore, this count is ordered stricken.
Count Forty-Four
The plaintiffs incorporate all preceding paragraphs and further allege that VMMC is a corporation engaged in trade or business and that this defendant engaged in misleading and deceptive conduct in violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§ 42-110b et seq.("CUTPA"). In Haynes v. Yale-New Haven Hospital,243 Conn. 17, 36, 37, 38, 699 A.2d 964 (1997) the Court held that professional negligence or malpractice does not constitute a CT Page 8394 violation of CUTPA.:
 We conclude that professional negligence that is, malpractice does not fall under CUTPA. Although physicians and other health care providers are subject to CUTPA, only the entrepreneurial or commercial aspects of the profession are covered, just as only the entrepreneurial aspects of the practice of law are covered by CUTPA. . . . . .
 Consequently, we . . . hold that only allegations of unfair, unconscionable, or deceptive methods, acts or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice may be brought under the [consumer protection act]. Allegations that concern misconduct in the actual performance of medical services or the actual practice of medicine would be improper. We do not consider the [l]egislature's use of `trade or commerce' in defining the application of the act to exhibit an intent to include the actual performance of medical services or the actual practice of medicine. If we were to interpret the act as such, the legislative enactments and well-developed body of law concerning medical malpractice could become obsolete.
 Only when physicians are engaging in the entrepreneurial, commercial, or business aspect of the practice of medicine are they engaged in `trade or commerce' within the purview of the [consumer protection act]." (Citation omitted.) Id., 486; see also Gadson v. Newman, 807 F. Sup. 1412, 1416 (C.D. Ill. 1992) (applying Illinois law, District Court determined that in order to bring claim against health care provider under consumer fraud act, "[t]he distinction between the business aspects [of medicine and the `actual practice of medicine' or the non-business aspects of medicine is crucial"). . . . We thus conclude that the touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated, or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation. To hold otherwise would transform every claim for medical malpractice into a CUTPA claim. Accordingly, within this framework, we must review the plaintiff's allegations of CUTPA violations and look to the underlying nature of the claim to determine whether it is really a medical malpractice claim recast as a CUTPA claim.
The plaintiffs have not alleged any facts concerning the CT Page 8395 entrepreneurial or business aspects of the defendants' provisions of medical services. Therefore, they have not stated a cause of action under CUTPA and this count, as well as the related claims for relief for punitive damages and attorneys fees are ordered stricken.
By the court,
Aurigemma, J.