******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANDREA MEYERS *v.* LIVINGSTON, ADLER, PULDA,
MEIKLEJOHN AND KELLY, P.C.
(SC 18996)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Vertefeuille, Js.

*Argued October 22, 2013—officially released April 1, 2014*

*Thomas P. Willcutts*, for the appellant (plaintiff).

*Proloy K. Das*, with whom were *Bernard F. Gaffney*
and, on the brief, *Richard F. Banbury*, for the appel-
lee (defendant).

*Opinion*

ZARELLA, J. The principal issue in this appeal is whether allegations that a law firm breached its duty of undivided loyalty to a client and failed to follow the client's instructions regarding the prosecution of a lawsuit sound in breach of contract, to which a six year statute of limitations applies, or in legal malpractice, to which a three year statute of limitations applies. The plaintiff, Andrea Meyers, commenced this action against the defendant, Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., alleging breach of contract on the ground that the defendant, a law firm, pursued the interests of another client in derogation of the plaintiff's interests and did not follow the plaintiff's wishes and instructions when it represented her in a prior lawsuit against other parties. Notwithstanding the plaintiff's breach of contract allegations, the trial court characterized the allegations as sounding in legal malpractice and granted the defendant's motion for summary judgment, reasoning that the action was barred by the three year statute of limitations applicable to legal malpractice claims. The plaintiff appealed to the Appellate Court, which affirmed the trial court's judgment. *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 134 Conn. App. 785, 793, 41 A.3d 674 (2012). On appeal to this court, the plaintiff claims that the Appellate Court improperly affirmed the trial court's judgment because her claim sounded in breach of contract, and, therefore, it was not barred by the three year statute of limitations applicable to legal malpractice claims. The defendant responds that the trial court correctly characterized the plaintiff's claim as sounding in legal malpractice and that the Appellate Court properly affirmed the trial court's judgment. We agree with the defendant and, accordingly, affirm the judgment of the Appellate Court.

The following relevant facts are set forth in the Appellate Court's opinion. "The defendant represented the plaintiff in an action against Shek Hong, Joanne Hong, Hontek Corporation and T.C. Specialty Products, Inc. While representing the plaintiff in that action, the defendant agreed to represent another client, Diane Thibodeau, who had similar claims against the same parties. The defendant joined the claims of the plaintiff and Thibodeau into a single legal action. On December 14, 1999, a settlement of the litigation was reported on the record. The terms of the settlement were reviewed in open court, and the plaintiff was canvassed by the court.[1] In February, 2000, the [Hongs and Hontek Corporation] filed a motion to enforce the settlement agreement because the plaintiff had declined to sign a release. By motion dated February 22, 2000, the defendant sought to withdraw its appearance on behalf of the plaintiff.[2] On February 25, 2000, the plaintiff executed the settlement agreement and release. The defendant received the settlement check and, after deducting a

portion for attorney's fees and/or expenses owed, ultimately remitted the balance to the plaintiff.

"The plaintiff served [the defendant with] a one count complaint on February 21, 2006. The plaintiff claimed that the defendant was not entitled to [attorney's fees] because its representation was unprofessional. She alleged that the defendant 'breached its contract duties' to her by bringing about a settlement of the prior action in furtherance of Thibodeau's interests and against the interests of the plaintiff. The defendant filed an answer and special defenses, in which it asserted, inter alia, that the action was barred by the statute of limitations.

"The defendant filed a motion for summary judgment on the ground that the plaintiff's claim sounded in tort and was barred by the applicable three year statute of limitations; General Statutes § 52-577; or, in the alternative, that it was barred by the six year statute of limitations for contract claims. General Statutes § 52-576. The court initially denied the defendant's motion, finding that the action, which was served on February 21, 2006, was initiated within the statute of limitations for contract claims, which began to run on February 25, 2000, when the plaintiff executed the settlement agreement in the underlying action.

"In January, 2010, the court granted the defendant's motion to reargue the denial of its motion for summary judgment. At reargument, the defendant argued that the plaintiff's complaint sounded in tort, not contract. The court vacated its prior ruling in which it had denied the defendant's motion for summary judgment and granted the motion for summary judgment, reasoning that the complaint sounded in tort and that the three year limitations period applicable to tort actions had run. The court additionally found that if it were a contract action, it still [had] not [been] commenced within the six year statute of limitations because the statute began to run on December 14, 1999, the date on which the alleged injury was inflicted, more than six years before the action was brought in February, 2006.

"In June, 2010, the plaintiff filed a motion to reargue the court's granting of the defendant's motion for summary judgment. After reconsideration of the parties' arguments, the court denied the relief requested and affirmed its decision granting the defendant's motion for summary judgment. The court determined that the complaint claimed both legal malpractice and breach of contract and that because the plaintiff was fully aware of her claims by December 14, 1999, but did not bring the action until 2006, her claim was barred by both the three year legal malpractice and six year contract statutes of limitations." (Footnotes altered.) *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, supra, 134 Conn. App. 786–88.

The plaintiff appealed to the Appellate Court, which

affirmed the trial court's judgment. Id., 793. Judge Beach, writing for the majority, concluded that the trial court properly had determined that the plaintiff's claim did not sound in breach of contract because it was not based on an allegation that the defendant had not obtained a specific result or performed a specific task. Id., 791. Rather, the gravamen of the complaint was that the defendant had breached its professional duties, which fit squarely within the definition of a legal malpractice claim and thus was governed by the three year statute of limitations applicable to such claims. Id., 792–93.

Judge Lavine concurred separately, concluding that the complaint sounded in legal malpractice *and* breach of contract, and that both of the applicable statutes of limitations had expired. See id., 794 (*Lavine, J.*, concurring). In his view, the contract claim had accrued more than six years prior to the plaintiff's commencement of the action in 2006 because the plaintiff was aware, prior to December 14, 1999, that Thibodeau had been joined with her as a plaintiff despite the plaintiff's objection, that the plaintiff would be required to settle for less money even though her case was stronger than Thibodeau's, and that the defendant's awareness of this conflict of interest had caused it to terminate its representation of the plaintiff.[3] See id., 793–94 (*Lavine, J.*, concurring).

Judge Bishop, like Judge Lavine, concluded that the complaint sounded in both legal malpractice and breach of contract and that the statute of limitations had run on the legal malpractice claim. See id., 796, 797 n.2 (*Bishop, J.*, dissenting). He concluded, however, that a determination could not be made as to whether the statute of limitations had run on the contract claim because a question of fact remained as to when the claim had accrued. See id., 799–800 (*Bishop, J.*, dissenting). Judge Bishop thus concluded that the judgment should be reversed and the case remanded for further proceedings so that the trial court could make the factual findings necessary to resolve that issue. Id., 799–801 (*Bishop, J.*, dissenting).

We subsequently granted the plaintiff's petition for certification to appeal from the Appellate Court's judgment.[4] *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 305 Conn. 920, 920–21, 47 A.3d 881 (2012). On appeal to this court, the plaintiff claims that the allegations in the complaint, the evidence adduced in support of the summary judgment motion, and the applicable case law establish that her claim sounds in breach of contract rather than in legal malpractice and that she commenced the action before the applicable statute of limitations had run. We disagree with the plaintiff that her claim sounds in contract, and, therefore, we do not reach the issue of whether the claim was brought within the six year statute of limita-

tions applicable to contract claims.

As a preliminary matter, we set forth the standard of review. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Ugrin* v. *Cheshire*, 307 Conn. 364, 389, 54 A.3d 532 (2012). In addition, interpretation of the pleadings, which is required in the present case, is always a question of law over which our review is plenary. See, e.g., *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 536, 51 A.3d 367 (2012).

With respect to the governing legal principles, it is well established that claims may be brought against attorneys sounding in contract or in tort, and that "[s]ome complaints state a cause of action in both contract and tort." *Stowe* v. *Smith*, 184 Conn. 194, 199, 441 A.2d 81 (1981); see also *Krawczyk* v. *Stingle*, 208 Conn. 239, 245, 543 A.2d 733 (1988). "[O]ne cannot bring an action [under both theories, however] merely by couching a claim that one has breached a standard of care in the language of contract. . . . [T]ort claims cloaked in contractual language are, as a matter of law, not breach of contract claims." (Citations omitted; internal quotation marks omitted.) *Weiner* v. *Clinton*, 106 Conn. App. 379, 383, 942 A.2d 469 (2008). To ensure that plaintiffs do not attempt to convert negligence claims into breach of contract claims "by talismanically invoking contract language in [the] complaint"; *Gazo* v. *Stamford*, 255 Conn. 245, 262, 765 A.2d 505 (2001); reviewing courts may "pierce the pleading veil" by looking beyond the language used in the complaint to determine the true basis of the claim. Id., 262–63.

"Whether [a] plaintiff's cause of action is one for malpractice [or contract] depends upon the definition of [those terms] and the allegations of the complaint." *Barnes* v. *Schlein*, 192 Conn. 732, 735, 473 A.2d 1221 (1984). "Malpractice is commonly defined as the failure

of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . ." (Footnote omitted; internal quotation marks omitted.) Id. The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. *Maloney* v. *Connecticut Orthopedics, P.C.*, 47 F. Supp. 2d 244, 249 (D. Conn. 1999); see also *American Express Centurion Bank* v. *Head*, 115 Conn. App. 10, 15–16, 971 A.2d 90 (2009). In other words, "[a]n action in contract is for the breach of a duty arising out of a contract . . . [whereas] an action in tort is for a breach of duty imposed by law." *Gazo* v. *Stamford*, supra, 255 Conn. 263; see also W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984) § 92, pp. 655–56.

In determining whether a claim sounds in breach of contract or in tort, we are mindful of the well established principle that an independent claim of tortious conduct may arise in the context of a contractual relationship. See, e.g., *Gazo* v. *Stamford*, supra, 255 Conn. 263 ("[i]t is true, of course, that out of a contractual relationship a tort liability, as in negligence, may arise" [internal quotation marks omitted]); *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 199 Conn. 683, 688, 508 A.2d 438 (1986) ("a defendant may be liable in negligence for the breach of duty which arises out of a contractual relationship"); *Johnson* v. *Flammia*, 169 Conn. 491, 496, 363 A.2d 1048 (1975) ("[e]ven though there may not be a breach of contract, liability may arise because of injury resulting from negligence occurring in the course of performance of the contract"); *Dean* v. *Hershowitz*, 119 Conn. 398, 409, 177 A. 262 (1935) ("[w]here there is a precedent relationship, all that is necessary to furnish a basis for an action of negligence is that there be present the elements necessary to establish such a cause of action, and if that is so, that that relationship is one of contract is no sound reason why the action should not lie"). Accordingly, the fact that the contract in the present case required the defendant to provide the plaintiff with legal representation and that the plaintiff was dissatisfied with the defendant's performance does not necessarily mean that her claim of improper representation sounds in breach of contract.

Although the issue of whether a claim of attorney misconduct sounds in breach of contract or in tort appears to be one of first impression for this court, we previously have concluded that a claim alleging that the defendant attorney violated the specific instructions of his client sounded in breach of contract. See *Stowe* v. *Smith*, supra, 184 Conn. 195, 198–99 (allegations that defendant failed to prepare will in accordance with decedent's instructions regarding disposition of prop-

erty to beneficiaries sounded in breach of contract). Other Connecticut courts similarly have determined that an attorney's failure to comply with the specific provisions of a contract sounded in breach of contract. See *Connecticut Education Assn., Inc.* v. *Milliman USA, Inc.*, 105 Conn. App. 446, 459–60, 938 A.2d 1249 (2008) (allegations that defendant agreed to maintain plaintiffs' pension plan in compliance with Internal Revenue Code and Employment Retirement Income Security Act but failed to provide competent and professional services necessary to maintain pension plan in good standing as qualified, defined benefit pension plan sounded in breach of contract because allegations referred to defendant's failure to satisfy contractual obligation to ensure compliance with federal law); *Hill* v. *Williams*, 74 Conn. App. 654, 659–60, 813 A.2d 130 (allegations that defendant agreed to represent plaintiff in civil action against former husband, in appeal relating to divorce, in proceedings to obtain support and sole custody of children, and in legal malpractice action against her former divorce attorney, but that he failed to proceed in several of those actions and refused to take critical steps in others, sounded in breach of contract, in part because defendant's refusal to perform actions for which he was retained suggested intentional rather than negligent conduct), cert. denied, 263 Conn. 918, 822 A.2d 242 (2003); *Mac's Car City, Inc.* v. *DeNigris*, 18 Conn. App. 525, 527, 529, 559 A.2d 712 (allegations that defendant agreed to represent plaintiff in lawsuit and entered appearance, but failed to defend lawsuit and failed to take action to open default judgment following failure to plead or to have judgment set aside, sounded in breach of contract), cert. denied, 212 Conn. 807, 563 A.2d 1356 (1989). The decisions in these cases are consistent with the general principle that "[a]n action in contract is for the breach of a duty arising out of a contract"; *Gazo* v. *Stamford*, supra, 255 Conn. 263; because the attorney in each case failed to perform the tasks that were required under the contract. See 1 R. Mallen & J. Smith, Legal Malpractice (5th Ed. 2000) § 8.6, p. 818 ("[t]he prevailing rule is that there is no cause of action for breach of an express contract unless the wrong sued for is breach of a specific promise").

Correspondingly, Connecticut courts have concluded that claims alleging that the defendant attorney had performed the required tasks but in a deficient manner sounded in tort rather than in contract. See, e.g., *Weiner* v. *Clinton*, supra, 106 Conn. App. 384–86 and n.5 (allegations that defendant agreed to use reasonable care, skill and diligence in providing legal services to plaintiffs but failed to seek stay of action based on agreement to arbitrate, failed to seek additional extensions of time to comply with discovery deadlines, failed to object to certain discovery requests, failed to comply with discovery requests in timely manner, and failed to properly advise defendants of status of proceedings,

resulting in default judgment against plaintiff and monetary damages, sounded in legal malpractice because complaint contained no allegations that defendant had failed or refused to perform specific actions required by contract); *Pelletier* v. *Galske*, 105 Conn. App. 77, 79, 83, 936 A.2d 689 (2007) (allegations that parties entered into contract pursuant to which defendant accepted fee from plaintiff for assistance in purchasing condominium unit but that defendant failed to advise plaintiff that condominium unit was affordable housing unit subject to resale price limitations for twenty years, failed to obtain signed statement from plaintiff that defendant had explained affordable housing covenants applicable to condominium unit, and failed to explain affordable housing covenants sounded in legal malpractice because complaint alleged negligence and breach of requisite standard of care in performance of legal services), cert. denied, 285 Conn. 921, 943 A.2d 1100 (2008); *Alexandru* v. *Strong*, 81 Conn. App. 68, 70, 78–80, 837 A.2d 875 (allegations that defendant entered into retainer agreement providing that he would represent plaintiff in federal action against former employer but that he filed negligent infliction of emotional distress claim in untimely manner, which resulted in federal court's granting of motion for summary judgment for employer on that claim, sounded in legal malpractice because essence of claim was defendant's failure to use due diligence and breach of professional standard of care), cert. denied, 268 Conn. 906, 845 A.2d 406 (2004); *Caffery* v. *Stillman*, 79 Conn. App. 192, 194, 198, 829 A.2d 881 (2003) (allegations that defendant "agreed to pursue vigorously all legal rights and remedies available to the plaintiff for damages sustained as a result of his . . . work-related injuries and to diligently represent, protect and defend the plaintiff's rights to a full and fair economic recovery, and to provide the plaintiff with competent and accurate advice concerning his legal rights and remedies in connection therewith," but that defendant incorrectly informed plaintiff in conjunction with settlement of workers' compensation claim that he could bring separate action against city for negligence and promised to help plaintiff do so, constituted claim of legal malpractice because plaintiff had alleged damages arising from defendant's failure to meet minimum standard of care when defendant gave plaintiff incorrect legal advice, not breach of promise to take specific action against city [internal quotation marks omitted]); *Shuster* v. *Buckley*, 5 Conn. App. 473, 474, 478, 500 A.2d 240 (1985) (allegations that defendant was retained to represent plaintiff in pending criminal matters but failed to file motion to withdraw plaintiff's guilty plea prior to imposition of sentence sounded in legal malpractice, in part because allegations that defendant failed to use due diligence in performing legal services were couched in terms of negligent conduct). The decisions in these cases are consistent with the well established principle that "an action in tort is for

a breach of duty imposed by law." *Gazo* v. *Stamford*, supra, 255 Conn. 263.

Having reviewed the foregoing cases, we conclude that the plaintiff's allegations in the present case do not sound in breach of contract. The complaint alleges that the defendant breached its contractual duties to the plaintiff when "(a) it pursued the interests of . . . Thibodeau in derogation of the interests, wishes and instructions of the plaintiff in bringing about a settlement of the lawsuit; and/or, (b) it failed and/or refused to follow the express wishes and instructions of the plaintiff to reject the settlement offer in the lawsuit and to continue to prosecute the lawsuit."[5] Neither allegation, however, refers to the violation of a specific contractual provision. The only substantive provision in the contract unrelated to compensation states: "I, [the plaintiff], do hereby retain the [defendant] law firm . . . to represent me in connection with my claims against Hontek Corporation, Shek Hong and Joanne Hong in litigation in Connecticut Superior Court."[6] The contract does not prohibit the defendant from representing any other person with similar claims against the same parties, does not refer to any details of the litigation over which the plaintiff wished to establish control, and contains no specific instructions as to how the plaintiff wanted the defendant to proceed in its representation of her.

To the extent the plaintiff suggests that her complaint alleges breach of contract simply because the defendant did not represent her interests and wishes, this claim has no legal support. Although we recognize that "[t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically"; (internal quotation marks omitted) *Hill* v. *Williams*, supra, 74 Conn. App. 656; no Connecticut court has deemed an allegation of this general nature sufficient to constitute a breach of contract claim unless accompanied by specific allegations that the defendant attorney failed to take action normally expected of an attorney in furtherance of the agreed on purpose for which the attorney was hired, such as failing to prosecute, defend, or take an essential step in litigating a cause of action.

Finally, with respect to the plaintiff's claim that the defendant failed to follow her instructions to reject the settlement offer and to continue prosecuting the action after the parties had agreed in open court to accept the offer, we recognize that when a client instructs an attorney to perform certain tasks or to perform in a specified manner, "[t]he undertaking then becomes contractual in nature . . . ." 1 R. Mallen & J. Smith, supra, § 8.9, p. 822. "The basic rule is that an attorney specifically instructed by the client should follow those instructions with reasonable care and promptness or be liable for damages proximately caused by the fail-

ure." Id. "Because the theory is in contract, [however] the attorney's assent is required." Id. In addition, the client's instructions "must be ethically proper and not offend public policy. Thus, a lawyer must still comply with court orders and process even if that compliance is not consistent with a client's instructions." Id., p. 823.

In the present case, the plaintiff agreed to the settlement in open court following a canvass of the parties. Only after Hontek Corporation and the Hongs signed the agreement several weeks later did the plaintiff have a change of heart, refuse to sign the agreement, and ask the defendant to resist the provision that required her to withdraw her workers' compensation claim. At that point, the Hongs and Hontek Corporation filed a motion to enforce the agreement, and the plaintiff eventually signed the agreement upon the defendant's advice. Under these facts, the defendant had no contractual obligation to follow the plaintiff's instructions to resist the agreement because they were not included in the parties' contract, the defendant did not consent to the instructions in its discussions with the plaintiff, and, in any event, following them would have required the defendant to engage in a process intended to undo a legally enforceable agreement that had been reached by the parties and approved by the court.

We disagree with the plaintiff that the absence of language in the complaint referring to the defendant's conduct as "negligent" or to the fact that the defendant's performance "was below a standard of competence" distinguishes this case from other cases in which Connecticut courts have concluded that the plaintiff's claims sounded in tort. (Emphasis omitted; internal quotation marks omitted.) In addition to the fact that the complaint contains no allegations that the defendant breached any specific contract provisions, it relies in part on language typically used in negligence cases. This language includes that the defendant "owed to the plaintiff a duty of undivided loyalty and a duty to pursue and follow the plaintiff's interests, wishes and instructions in the prosecution of the lawsuit," and that, "[a]s a consequence of [the defendant's] breach of its legal services contract, the plaintiff suffered a loss of damages" in addition to the fees "that were paid to or withheld by [the defendant] as compensation for its legal services." This language and the remedy of damages is identical to the language and remedy of damages sought in connection with causes of action for negligence. See, e.g., *Lutynski* v. *B. B. & J. Trucking, Inc.*, 31 Conn. App. 806, 813, 628 A.2d 1 (1993) (cause of action in negligence arising from tortious conduct "subjects the tortfeasor to responsibility for the payment of money damages for the injuries sustained by the plaintiff because of the tortious conduct"), aff'd, 229 Conn. 525, 642 A.2d 7 (1994). Thus, the plaintiff's claim that the parties' dispute is only a "simple fee dispute" is belied not only by the lack of allegations concerning the breach

of any contract provisions, but by the language used and the relief requested in the complaint.

Other allegations also support the conclusion that the complaint sounds in legal malpractice rather than in breach of contract. As previously noted, "[m]alpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . ." (Footnote omitted; internal quotation marks omitted.) *Barnes* v. *Schlein*, supra, 192 Conn. 735. The services of Connecticut attorneys are governed by the Rules of Professional Conduct. Among those rules are two that speak directly to the principal allegations in the plaintiff's complaint, namely, rule 1.7 on conflicts of interest and rule 1.2 on the allocation of authority between a client and attorney.

Rule 1.7 (a) of the Rules of Professional Conduct provides in relevant part: "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

"(1) the representation of one client will be directly adverse to another client; or

"(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

Rule 1.2 (a) of the Rules of Professional Conduct provides in relevant part: "[A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. . . ."

Although the Rules of Professional Conduct specify that the "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption that a legal duty has been breached," they also acknowledge that, "since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct."[7] Rules of Professional Conduct, scope. Accordingly, even though the plaintiff does not rely expressly on the Rules of Professional Conduct as a basis for her claim, her allegations that the defendant breached its duty of undivided loyalty and its duty to follow her wishes and instructions in its prosecution and settlement of the prior lawsuit are consistent with

a claim of legal malpractice that relies on violations of rules 1.7 (a) and 1.2 (a) of the Rules of Professional Conduct as evidence of a breach of the applicable standard of conduct. See *Caffery* v. *Stillman*, supra, 79 Conn. App. 197–98 (concluding that complaint alleged violation of minimum standard of care rather than breach of contract).

We thus conclude that the plaintiff's allegations sound in tort rather than in breach of contract, and, as a consequence, the plaintiff's claim is barred by the three year statute of limitations applicable to tort claims.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The court engaged in the following colloquy with the parties and their attorneys:

"The Court: Please be seated everyone. I understand that the parties have reached a settlement.

"[Attorney Mary Kelly, Counsel for the Plaintiff and Thibodeau]: Yes, Your Honor.

"The Court: All right. Is there something you want to put on the record?

"[Attorney] Kelly: Yes. We just want to put on the essential terms of the agreement, just that there is a $110,000 settlement. Of the $110,000, we are going to allocate—$1000 goes to outstanding medicals for [the plaintiff]. The $109,000 remaining is divided one third for attorney's fees, one third for [the plaintiff], one third for . . . Thibodeau. Both [the plaintiff] and . . . Thibodeau are responsible for one half of the outstanding expenses of $5000. The money that is being paid to . . . Thibodeau and [the plaintiff], $10,000, will be treated as workers' compensation damages, which are not taxable. The remaining will be treated as nonwage income.

"The Court: As what?

"[Attorney] Kelly: As nonwage income . . . for pain and suffering. And, in addition, the parties have agreed that [the Hongs] will write a letter of apology to [the plaintiff and Thibodeau], the essential—the exact wording of which will be agreed upon by Attorney [Deborah] Etlinger [opposing counsel] and myself. And this is a global settlement of all of the [plaintiff's and Thibodeau's] claims, including their outstanding workers' compensation claims.

"The Court: And Attorney Etlinger, that's your understanding?

"[Attorney] Etlinger: It is, Your Honor.

"The Court: All right. And I just want to ask . . . if [the plaintiff and Thibodeau] have any questions about Attorney Kelly's recitation of the settlement. Is that your understanding, Miss Meyers [the plaintiff]?

"[The Plaintiff]: Yes.

"The Court: And is that acceptable to you?

"[The Plaintiff]: Yes.

"The Court: And Miss Thibodeau?

"[Thibodeau]: Yes.

"The Court: And as to . . . [Shek] and [Joanne] Hong?

"[Shek] Hong: Yes.

"[Joanne] Hong: Yes.

"The Court: All right. Well, I just want to thank you and actually congratulate you all, because, I think, this is a fair resolution of a very difficult case, and I'm happy to see that you've been able to resolve it, and in what appears to be a very reasonable and fair resolution of these issues in this case. I hope that you now all can just put it behind you and go on with the rest of your lives. . . . So I just want to thank you. And we can adjourn."

[2] The defendant filed a motion to terminate its representation of the plaintiff for good cause after she refused to sign the settlement agreement following its acceptance by all of the parties in open court and after she instructed the defendant to resist that part of the agreement requiring her to withdraw her workers' compensation claims. The defendant specifically explained: "[A] conflict has arisen over the settlement agreement. Having concluded that a conflict of interest now exists between [the plaintiff and Thibodeau], and that such conflict would prohibit continued representation of both [the

plaintiff and Thibodeau], [the defendant] respectfully requests that the court grant this request to withdraw its appearance as to [the plaintiff] *only*." (Emphasis added.)

[3] Judge Beach observed in a footnote that Judge Lavine was "correct in noting that even if it were a contract claim, summary judgment [was], nonetheless, appropriate." *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, supra, 134 Conn. App. 792 n.6.

[4] This court limited the certified questions to whether "the Appellate Court properly determine[d] that the allegations of the plaintiff's complaint against the defendant . . . failed to set forth a cause of action sounding in breach of contract"; *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 305 Conn. 920, 47 A.3d 881 (2012); and, if the answer to the first question is no, "did the Appellate Court properly determine that even if the complaint could be viewed as a contract action, summary judgment was appropriate because said action was barred by the six year statute of limitations?" Id., 921. Because two of the three Appellate Court panel members determined, however, that the plaintiff's complaint sounded in both breach of contract and tort, we reframe the certified questions as follows: Do the allegations of the plaintiff's complaint against the defendant set forth a cause of action sounding in breach of contract, and, if the answer to that question is yes, did the Appellate Court properly determine that summary judgment was appropriate on the contract claim because that claim was barred by the six year statute of limitations? See, e.g., *Ankerman* v. *Mancuso*, 271 Conn. 772, 777, 860 A.2d 244 (2004) (court may rephrase certified question to render it more accurate in framing issue presented).

[5] In support of these allegations, the complaint also alleges that the defendant "joined the claims of the plaintiff with those of . . . Thibodeau into a single legal action and complaint," that, "[d]uring the course of [the defendant's] joint representation of the plaintiff and . . . Thibodeau, [their] interests . . . came into conflict," and that, in response to a joint settlement offer conditioned on its acceptance by both the plaintiff and Thibodeau, the defendant "acted in furtherance of the interests, wishes, and instructions of . . . Thibodeau and against the interests, wishes, and instructions of the plaintiff in bringing about a settlement of the lawsuit . . . ." The complaint further alleges that, "[p]ursuant to the express and/or implied terms of the contract for legal services to represent the plaintiff in the lawsuit, [the defendant] owed to the plaintiff a duty of undivided loyalty and a duty to pursue and follow the plaintiff's interests, wishes and instructions in the prosecution of the lawsuit."

[6] We disagree with the plaintiff that the Appellate Court applied a double standard in considering evidence of the parties' contract provisions to determine whether the plaintiff's complaint alleged a breach of contract but rejecting evidence that the defendant filed a motion to withdraw its appearance on behalf of the plaintiff after she expressed reservations about the settlement agreement. The Appellate Court was not required to consider evidence of the defendant's motion to withdraw its appearance because the basis of the breach of contract claim was the defendant's alleged violation of its duty of undivided loyalty by pursuing the interests of Thibodeau in derogation of the plaintiff's interests and its duty to follow the plaintiff's wishes and instructions to reject the settlement offer and to continue to prosecute the lawsuit. The complaint contains no allegations regarding the defendant's decision to terminate its representation following the parties' acceptance of the settlement agreement in open court.

[7] The relevant passage of the Rules of Professional Conduct provides: "Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct." Rules of Professional Conduct, scope.